Karen ROBERTS, et al., Appellants,

v.

The FIRST STATE BANK OF STRATFORD, Texas, As Trustee and Independent Executor, et al., Appellees.

No. 07–89–0002–CV.

Court of Appeals of Texas, Amarillo.

July 13, 1989.

Rehearing Denied Aug. 7, 1989.

Robinson & Fotheringham, J. Bruce Teichman, Amarillo, for appellants.

Lovell & Lyle, Cynthia A. Quetsch, Dumas, for appellees.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

This appeal requires us to determine whether the trial court correctly declared that the reciprocal wills of decedents Hardy Coffman and Peggy Wood Coffman unambiguously expressed their intent to divide their respective estates only among their children who survived them. Determining that the court correctly so declared, we will overrule the single point of error challenging the declaration and affirm the court's declaratory judgment.

Hardy Coffman and Peggy Wood Coffman were husband and wife and the parents of nine children, *viz.*, Frances Stephens, Joyce Brooks, Roy Harvey Coffman, Barbara Bouldin, Homer Ted Coffman, Patsy J. Miller (formerly Patsy Jean Morford), Peggy Jo Tate (formerly Peggy Jo Judd), Thomas Perry Coffman, and Linda Sue Umphress. While all of the children were living on 5 August 1974, the parents executed separate, but similar wills.

The first provision for disposition in each will was that the surviving spouse would take the deceased spouse's interest in the home, automobiles, and personal effects. Next, each will had provisions in its paragraph V for the rest of the deceased spouse's property to be placed in trust with The First State Bank of Stratford, Texas, as trustee, for the benefit of the surviving spouse.

Subparagraphs (b)(2)–(4) of Paragraph V in each will are cast, except where we have bracketed the word "spouse" for the words "wife" and "husband" appearing in the respective wills, in this language:

(2) Upon the death of my [spouse], I direct that the remaining corpus of such trust be divided into as many equal parts as I have children surviving me. Each of my children shall be entitled to one of such equal parts.

(3) In the event that my [spouse] predeceases me, or in the event we should die as the result of a common disaster, then I give, devise and bequeath all of my property of whatsoever type or nature, whether separate or community and wheresoever situated for the benefit of my children living at the time of my death in the same manner and subject to the same conditions as set forth in paragraph V (2) hereof.

(4) In the event that any of my children should die before he is entitled to receive hereunder, then such deceased child's share of my estate shall go to his or her children or descendants, such child or children to take in equal shares and any such descendants to take in equal shares per stirpes, however, in the event that such child or children is not survived by children or descendants, then his or her share of the income, rents and revenues from this trust shall be distributed among the survivor(s) of my children on a share and share alike basis.

And, as its last provision, each will contained the appointment of the bank as independent executor of the will.

Subsequently in 1983 and 1984, and while Hardy Coffman and Peggy Wood Coffman were living, two of their children, Roy Harvey Coffman and Linda Sue Umphress, died. Roy Harvey Coffman was survived by three children, namely, Karen Roberts, Hardy Coffman, and Deon Coffman. Linda Sue Umphress was survived by five children, namely, Jennifer Umphress, Cole Umphress, Dirkson Lee Umphress, Laura Umphress, and Clayton Umphress.

Testator Hardy Coffman died in February, 1987. Peggy Wood Coffman died in May, 1988.

The bank, in its capacities as trustee of the Hardy Coffman Trust and as independent executor of the will of Peggy Wood Coffman, petitioned the trial court for a declaratory judgment. The bank sought, in effect, a declaration whether the assets are to be distributed to only the Coffmans' children living at the death of Peggy Wood Coffman or to both their living children and the children of their deceased children.

Upon the joinder of the issue and the hearing of evidence, the court rendered a judgment declaring that the will of each decedent clearly reflects the intent to divide each estate among their children who

survived them. The court made and filed findings of fact and conclusions of law in support of its judgment.

The eight grandchildren perfected this appeal to contend that the court erred in its declaration. In appealing, they do not contest the court's conclusion, with which we concur, that the Texas antilapse statute, section 68 of the Texas Probate Code Annotated (Vernon 1980), does not apply since survivorship is a required condition for taking under the wills. *White v. Moore,* 760 S.W.2d 242, 244 (Tex.1988). Rather, the grandchildren contend that because paragraph V(b)(4) is the last expression of disposition and it specifically provides for distribution to children of deceased children, it prevails over a preceding general clause in accordance with the principles of construction enunciated in *Henderson v. Parker,* 728 S.W.2d 768 (Tex.1987). We are not in accord.

As the *Henderson* court noted, in a will construction dispute, as is the present cause, the critical inquiry is: How did the testators intend to dispose of their property? *Id.* at 770. And as in *Henderson,* the parties here agree that the wills are not ambiguous, but they offer differing constructions to be placed upon the wills. Although we are not bound by the agreement, *White v. Moore,* 760 S.W.2d at 243, we, too, perceive no ambiguity in the testamentary intent expressed in the wills. In the absence of ambiguity, the intent is based on the express language used within the four corners of the wills. And, in this regard, specific provisions control over a general statement. *Henderson v. Parker,* 728 S.W.2d at 770.

The application of these principles to the language of the Coffmans' wills does not, contrary to the grandchildren's contention, elevate paragraph V(b)(4) to the prevalence given to the last expression of intent in the *Henderson* joint will. The joint will in *Henderson* contained a general statement of disposition to "our surviving children of this marriage," followed by a specific disposition of the estates to each of their three sons, one of whom predeceased the testators and left two surviving daughters.

The *Henderson* court held that the general statement of disposition to "our surviving children of this marriage" was intended to mean the children surviving at the time the will was executed, because it was followed by a specific disposition of the estates to each child, evidencing, as the last expression of intent, an intent to devise specific gifts to each child which would inure to the benefit of the daughters of the deceased child. 728 S.W.2d at 770. But that is neither the language of, nor the intent expressed in, the Coffmans' wills.

By their reciprocal wills, the Coffmans expressed a clear intent for a designed disposition of their estates upon the happening of certain events. In short, each provided that upon the death of the first one of them, the deceased's interest in the home, automobiles, and personal effects would vest in the surviving spouse, and the remainder of the deceased's property would pass under paragraph V into a trust for the benefit of the survivor. Any of their nine children who survived the first spouse to die would, by operation of paragraph V(b)(2), be entitled to an equal share of the corpus of the first deceased's trust remaining at, and to be delivered upon, the death of the surviving spouse. In the event any child being entitled to a share of the corpus should die after the death of the trustor but before the demise of the surviving spouse, that child's share would be distributed in accordance with paragraph V(b)(4) at the death of the surviving spouse. Then, at the death of the surviving spouse, that spouse's estate would, by virtue of paragraph V(b)(3), be vested equally in the deceased's "children living at the time of my death."

In the course of events, Hardy Coffman died first, survived by his spouse, Peggy Wood Coffman, and seven of the nine children. By the express terms of his will, his interest in the home, automobiles, and personal effects vested in Peggy Wood Coffman, and the remainder of his property passed into a trust for her benefit. At the time of his death, each of the seven children who survived him became entitled to a one-seventh share in his trust corpus re-

**418**

maining at, and to be received upon, the death of Peggy Wood Coffman.

None of the seven children surviving Hardy Coffman died before the demise of Peggy Wood Coffman. At the time she died, survived by the same seven children, the corpus of Hardy Coffman's trust was distributable to the seven living children who survived him, and the property of Peggy Wood Coffman vested in those same seven children who were "living at the time of [her] death." Thus, the vesting of the Coffmans' estates in accordance with their expressed intent upon the happening of the events that did occur prevented the provisions of paragraph V(b)(4) from becoming effective.

This interpretation conforms, as did the decision in *Henderson v. Parker,* 728 S.W.2d at 770, to the cardinal rules of construction that the real intention must be ascertained by giving effect to every part of each will, and any particular paragraph which, considered alone, would indicate a contrary intent must yield to the intention expressed by the whole instrument. *Reynolds v. Park,* 521 S.W.2d 300, 309 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.). To accept the grandchildren's contention that paragraph V(b)(4) prevails over the preceding provisions would violate the latter rule, for their construction would negate the effect of paragraph V(b)(2) of Hardy Coffman's will and paragraph V(b)(3) of Peggy Wood Coffman's will.

It follows that the trial court's judgment is a correct declaration that the reciprocal wills unambiguously expressed the Coffmans' intent to divide their respective estates among their children who survived them. The grandchildren's point of error is overruled.

The judgment is affirmed.