**David B.T. MYRICK, Jr. and Edna Myrick Archer, Appellants,**

v.

**William Lewis MOODY IV and Libbie Moody Thompson, Appellees.**

**No. C14–90–0009–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 8, 1990.

Rehearing Denied Jan. 24, 1991.

Wm. B. (Ben) Adair, Houston, Elmo Schwab, Thomas W. McQuage, Galveston, for appellants.

John Eckel, Charles Brown, Galveston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

This is an appeal from a summary judgment concerning construction of a trust instrument. Myrick brings four points of error and Archer brings one point of error, essentially claiming that the trial court erred in granting the summary judgment because fact issues existed as to the settlor's intent and because the language of the trust was ambiguous. The judgment of the trial court is reversed.

In 1935, W.L. Moody, Jr. created a trust benefitting three of his children and three grandchildren. Moody National Bank of Galveston is the trustee. Paragraph II of the trust provided for the payment of trust income to the six named beneficiaries as follows: (1) one-fourth (¼) to Moody's daughter, Mary Moody Northen, during her lifetime, (2) one-fourth (¼) to Moody's daughter, Libbie Moody Thompson, during her lifetime, (3) one-fourth (¼) to Moody's son, Shearn Moody, during his lifetime, and (4) one-fourth (¼) in equal shares to Moody's grandchildren, Edna Haden Moody, Virginia Moody, and William Lewis Moody IV, during the lifetime of Moody's son, William Lewis Moody III ("Moody III"). Thus, the three grandchildren who were named beneficiaries received a one-twelfth (one-third of one-fourth) share of the trust income.

Paragraph II further provided for distribution of corpus. Upon the death of Moody's three children, named as beneficiaries, paragraph II provided that their one-fourth (¼) of the trust estate or corpus would pass to their "surviving children and the children of any of [his or her] deceased children in equal shares per stirpes." Upon the death of Moody's son, Moody III, who was not a beneficiary under the trust, paragraph II provided that one-fourth (¼) of the trust estate would pass in equal shares to his "surviving children and the children of any of his deceased children in equal shares per stirpes."

Paragraph III provided for distribution of income and corpus in the event that any of Moody's children, named as beneficiaries, should die without issue. As to income, paragraph III stated:

... that part of the income which such deceased child would have received if living shall thereafter be paid over in equal shares to his or her then surviving brothers and sisters during their respective lives, excepting that the then surviving children of William Lewis Moody, III, collectively, shall receive one portion or share instead of him....

Paragraph III further provided that, if one of Moody's children who were named as beneficiaries should die without leaving issue, their portion of the trust corpus would pass as follows:

... [the portion of] principal or corpus which the issue of such deceased child would have received shall be added in equal shares to the portion that his or her surviving brothers and sisters and the children of William Lewis Moody, III, collectively, are entitled to receive....

In 1936, Shearn Moody died leaving two sons. Pursuant to paragraph II, the Trustee distributed Shearn Moody's one-fourth share of the corpus (excepting shares in real estate and other investments that have not yet been sold) to his two sons. This left three shares of trust income for distribution: one-third to Mary Moody Northen, one-third to Libbie Moody Thompson, and one-third in equal shares to the three named beneficiary grandchildren. Thus,

the grandchildren's shares changed to one-ninth (one-third of one-third).

In 1963, Edna Moody Myrick, a named beneficiary grandchild, died leaving two children who are the appellants in this case. Because paragraph II prohibited distribution of corpus to the three grandchildren who were named beneficiaries until the death of their father, Moody III, the Trustee continued to pay Edna Moody Myrick's one-ninth share of trust income to appellants. Likewise, when Virginia Moody Tankersly, another grandchild named as a beneficiary, died in 1981, the Trustee paid her one-third share of the income to her two children.

In 1986, Mary Moody Northen died without leaving issue, requiring application of paragraph III. The Trustee filed a declaratory judgment action alleging ambiguity and asking the trial court to determine who was entitled to trust income and corpus. Asserting that paragraph III was unambiguous, appellees Libbie Moody Thompson ("Thompson") and William Lewis Moody IV ("Moody IV") filed a joint motion for summary judgment. As the sole surviving named beneficiaries, Moody IV and Thompson claimed they were entitled to receive Northen's share of income and corpus under the provisions of paragraph III. The trial court agreed finding no ambiguity and holding that the Trustee should pay Northen's share of income equally to Thompson and Moody IV. The trial court also ruled that, upon the death of appellee Thompson, one-half of the remaining corpus should go to her lineal descendants. As to Moody IV, the trial court held that, until the death of Moody III, he or his lineal descendants should receive trust income and, upon the death of Moody III, the Trustee should distribute the corpus share to Moody IV or to his lineal descendants.

In his fourth point of error, Myrick claims the trial court erred in ruling that the donor's trust unambiguously expressed an intent to divide the trust estate portion among only named beneficiaries who were living at the death of a beneficiary without issue. Likewise, in her first point of error, Archer claims the trial court erred in grant-

ing summary judgment because the language in paragraph III was ambiguous.

As the movants for summary judgment, appellees had the burden of showing the trial court that no issue of material fact existed and that they were entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Construction of a trust instrument is a question of law for the trial court where no ambiguity exists. *See Hancock v. Krause*, 757 S.W.2d 117, 119 (Tex.App.—Houston [1st Dist.] 1988, no writ).

The trial court's primary objective in construing a will or trust is to determine the intent of the maker. *See White v. Moore*, 760 S.W.2d 242, 243 (Tex.1988); *Henderson v. Parker*, 728 S.W.2d 768, 770 (Tex.1987); *Moody v. Pitts*, 708 S.W.2d 930, 945 (Tex.App.—Corpus Christi 1986, no writ). To do so, the court must look to the language within the four corners of the trust instrument. *See Henderson*, 728 S.W.2d at 768; *Moody*, 708 S.W.2d at 935. If possible, the court should construe the instrument to give effect to all provisions so that no provision is rendered meaningless. *See Moody*, 708 S.W.2d at 935; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the court can give a "certain or definite legal meaning or interpretation" to the words of an instrument, the instrument is unambiguous and the court may construe it as a matter of law. *Coker*, 650 S.W.2d at 393. If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous. *Id.* Whether an instrument is ambiguous is a question of law for the trial court, and if the instrument is ambiguous, its interpretation presents a fact issue precluding summary judgment. *Id.* at 394.

In the instant case, the trial court found the language of paragraph III unambiguous and ostensibly followed the express language of this provision. As to disposition of Northen's share of trust income, paragraph III provided that her income share was to go to "her *then surviving* brothers and sisters during their respective lives, excepting that the *then surviving* children of [Moody III], collectively, shall receive one portion or share instead of him...." (emphasis added). Because this provision required survivorship for the taking of a portion of Northen's share of income, the trial court correctly held that Northen's share of income should go to Thompson, the only surviving brother or sister, and to Moody IV, the only surviving child of Moody III.

As to disposition of Northen's share of trust corpus, paragraph III provided that her share should "be added in equal shares to the portions that his or her *surviving* brothers and sisters and the children of [Moody III], collectively, are entitled to receive...." (emphasis added). Contrary to the provision for distribution of income, this provision does not restrict the beneficiaries to those "then surviving." Rather, this provision only modifies the takers who are brothers or sisters of Northen by the word "surviving." No such term modifies the phrase "the children of [Moody III], collectively." The trial court, however, construed the language of this provision to require survivorship of the brothers or sisters of Northen and to *require survivorship* of the children of Moody III. In support of this construction, the trial court cited *Roberts v. First State Bank*, 774 S.W.2d 415 (Tex.App.—Amarillo 1989, writ denied).

In *Roberts*, the trial court was asked to construe the provisions in reciprocal wills for disposition of trust corpus. *Id.* at 416. The first pertinent paragraph provided that, upon the death of the surviving spouse, remaining trust corpus was to "be divided into as many equal parts as I have children surviving me." *Id.* A later paragraph provided that, in the event a child "should die before he is entitled to receive [his portion of corpus], then such deceased child's share of my estate shall go to his or her children or descendants, such child or children to take in equal shares and any such descendants to take in equal shares per stirpes...." *Id.* Two of the testators' children had predeceased them and the appellants were the children of the testators' two deceased children. *Id.* at 416. Because the will required that the children survive one of the testators to be entitled to a share of corpus, the court reasoned

that appellants were not entitled to a share of corpus. *Id.* at 417–18. The trust language in the instant case is less clear.

■ Unlike the will provisions in the *Roberts* case, the Moody trust provided for distribution of income upon Northen's death to "then surviving" named beneficiaries. Furthermore, the Moody trust provided for distribution of corpus to "surviving brothers and sisters [of Northen] and the children of [Moody III], collectively." The provision regarding disposition of trust corpus may, as the trial court ruled, require survivorship of both Northen's siblings and the children of Moody III. On the other hand, this language may require survivorship of Northen's siblings and not of the children of Moody III because the term "surviving" may only modify the words immediately following it (*i.e.*, "brothers and sisters"). This latter construction is more consistent with the paragraph II provision for per stirpes distribution of corpus.

■ Thompson and Moody IV argue that, because the word "likewise" links the provision regarding distribution of income with that regarding corpus, the court should construe the two provisions identically. In support of this argument, Thompson and Moody IV cite *Reece v. McCrary*, 51 Ga.App. 746, 181 S.E. 697 (1935), in which a trust provided for use of corpus, upon the approval of the trustee or executor, on behalf of the children of the testator's son. The trust instrument, however, provided that if the testator's son should become disabled, "the corpus may be likewise used for his maintenance and support." *Reece*, 181 S.E. at 698. The Georgia court construed the word "likewise" to mean that all trust terms applying to the son's children also applied to the son. *See id.* at 699–700. Thus, trustee or executor approval was a prerequisite to use of corpus for the son's benefit. *See id.* at 700. Although the Georgia court held the phrase "may be likewise used" to require identical treatment, this holding is not dispositive in the instant case where the word "likewise" joins two sentences or complete thoughts.

WEBSTER'S THIRD NEW INT'L DICTIONARY (1976) classifies the word "likewise" as an adverb meaning "in like manner; similar-

ly" when used in a phrase such as "to do likewise." The adverb "likewise" may also serve as a conjunction, *see* H.W. FOWLER, FOWLER'S MODERN ENGLISH USAGE (2d ed. 1965), and when so used, it means "in addition; moreover; besides." WEBSTER'S THIRD NEW INT'L DICTIONARY (1976). In the instant case, the word "likewise" connects two sentences, one regarding disposition of income and one regarding disposition of corpus, each beginning with the condition of a named beneficiary child dying without issue. Thus, "likewise" in this position most likely serves as a conjunction and does not mandate equivalent or identical construction of the two sentences.

Because the trust language describing disposition of corpus is capable of more than one meaning, *see Coker*, 650 S.W.2d at 393, it is ambiguous and the trial court erred in concluding otherwise. Furthermore, the interpretation of an ambiguous instrument is a fact question precluding summary judgment. *Id.* at 393. Consequently, the trial court erred in granting summary judgment. Myrick's fourth point of error and Archer's first point are sustained.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.