COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )               No.  08-02-00210-CV

                                                                              )

                                                                              )                    Appeal from the

IN THE MATTER OF THE ESTATE
OF             )

LARRY STEPHENS MOFFATT,
Deceased        )             County Court at
Law #2

                                                                              )

                                                                              )          
of Midland County, Texas

                                                                              )

                                                                              )                    (TC# P13478)

                                                                              )

 

 

MEMORANDUM  OPINION

 

This is an appeal
from a final summary judgment based on a claim brought pursuant to the Uniform
Declaratory Judgments Act to construe certain will provisions.  On appeal, Appellant Tambera
Stickney raises two issues, in which she contends the trial court erred in
construing the term Astocks@ to include decedent=s company, Moffatt
Carpets, Inc., and argues the trial court erred in awarding attorney=s fees for the declaratory judgment
action.[1]  We affirm the trial court=s judgment.

BACKGROUND








On February 14,
2001, Larry Stephens Moffatt died at the age of
sixty-three years.  On February 27, 2001,
Appellant Tambera L. Stickney, daughter of the
decedent and stepdaughter of Appellee Leslie Moffatt, filed an application to probate decedent=s will dated January 27, 1982 (A1982 will@)
in trial cause number P13075 in the County Court at Law in Midland County,
Texas.  On March 2, 2001, Mrs. Moffatt filed an application to probate a will written by
decedent dated February 14, 2001 (A2001
will@) in
trial cause number P13079 in the County Court at Law, Midland County.  On March 13, 2001, the trial court
consolidated Mrs. Moffatt=s
case with trial cause number P13075.  On
April 16, 2001, Ms. Stickney filed an amended application to probate a will by
decedent dated January 13, 1993 (A1993
will@).

On August 10,
2001, Mrs. Moffatt amended her application to probate
the 2001 will to include a separate cause of action seeking a declaratory
judgment construing Mrs. Moffatt=s devise under either the 1993 will or
the 2001 will to be: decedent and Mrs. Moffatt=s residence, all life insurance
proceeds, Mrs. Moffatt=s
automobile, and all of the decedent=s
stocks and bonds including 100 per cent of the stock of Moffatt
Carpets, Inc.  The pleading stated that
Mrs. Moffatt was required to bring this action
under the Declaratory Judgments Act and included a request that the court award
her all of her costs and reasonably and necessary attorney=s fees, which are equitable and just,
in bringing this action pursuant to Tex.Civ.Prac.&Rem.Code Ann. '
37.009.  On the same date, Mrs. Moffatt filed a motion for partial summary judgment on the
declaratory judgment action.  Exhibits
attached to the motion included an affidavit from Michael J. Canon, Mrs. Moffatt=s
attorney in the lawsuit, attesting that the reasonable and necessary attorney=s fees in the declaratory judgment
action were $5,900.

Under the
provisions of the 1993 will, the decedent devised to Mrs. Moffatt:









[T]he home in which we are residing at
the time of my death (including the real estate and all improvements thereon
situated), all household furniture and furnishings owned by me at the time of
my death, and all of my interest, if any, in and to her clothing, personal
effects and jewelry, the automobile which is regularly and customarily operated
by her at the time of my death, and all stocks, bonds and securities owned
by me at the time of my death, and all life insurance proceeds, if any,
which are either payable to her as a named beneficiary or which are payable to
my estate.[2]  [Emphasis added].

 

In her motion for partial summary
judgment, Mrs. Moffatt requested inter alia that the court construe either will as awarding
her all stocks owned by decedent, including all of the stock owned in Moffatt Carpets, Inc. 
Mrs. Moffatt attached as summary judgment
evidence, two stock certificates, one which states decedent is owner of 18,750
shares of Moffatt=s
Carpets, Inc., A a
corporation organized under the laws of the State of Texas@ and a second which states decedent is
owner of 6,250 shares of Moffatt=s Carpets, Inc., Aa corporation organized under the laws
of the State of Texas.@








In her response to
the motion, Ms. Stickney argued that Athe
meaning that should be given the word >stocks= as used in . . . the 1993 will@ was in dispute.  Ms. Stickney urged that the word Astocks@ was not intended by the
decedent to include Moffatt Carpets, Inc., and that
the carpet company was intended to be included in the residuary clause of the
will.  Ms. Stickney also argued that
there was a fact issue because Athe
word >stocks= in the context presented by its use in
the 1993 will can reasonably be interpreted in more
than one way,@
therefore the term was ambiguous.  In
support of her response, Ms. Stickney attached the affidavit of John Moffatt, the decedent=s brother, in which Mr. Moffatt stated his brother discussed with him what his
intentions were as he planned to make changes in the 1993 will.  Mr. Moffat attested:

When using the term >stock=
when discussing his holdings it was clear that my brother meant publicly traded
stocks, bonds and other securities such as one buys and sells through a stock
broker such as Little and Co.  I am in
the business of analyzing stocks and giving advice regarding investments.  My brother often looked to me to advise
him.  The term >stock= without a doubt meant to him that
which was publicy [sic] traded in the stock
market.  Just as certainly, he never
referred to (and it was clear that he did not consider) Moffatt
Carpets in the category of what he considered as part of his stock portfolio or
as a stock.

 

In reply to Ms.
Stickney=s
response, Mrs. Moffatt argued that the term Astocks@
in the bequest to her under the 1993 will was not ambiguous.  Mrs. Moffatt
asserted that Ms. Stickney=s
offer of extrinsic evidence, Mr. Moffatt=s affidavit, was an attempt to create
the appearance of ambiguity.  The court
held a hearing on the motion for partial summary judgment on October 12, 2001.








On November 5,
2001, Ms. Stickney moved for leave of court to file a controverting
affidavit regarding reasonable attorney=s
fees.  Attached to the motion was an
affidavit by Abner Burnett, Ms. Stickney=s counsel, stating that in his opinion,
Aattorney=s
fees in the amount of $100.00 per hour would be a reasonable fee for the
services required to perform the research, discovery, drafting, and review of
materials such as one would be expected to do on a case such as this.@ 
Mr. Burnett also stated, AIt
is my opinion that without a more detailed explanation of the work done, the
level of expertise brought to bear, the itemization of expenses, and a
distinction between what work has been done on the case generally and what
pertains specifically to the subject of the Motion for Partial Summary
Judgment, one cannot determine that the fees claimed were either reasonable or
necessary.@

On December 20,
2001, the trial court granted Ms. Stickney leave to file her controverting affidavit, and by an order, scheduled a
hearing for January 9, 2002 on a motion by Mrs. Moffatt
filed the same day, which requested that the court award her all of her costs
and reasonable and necessary attorney=s
fees in bringing the declaratory judgment action.  On December 20, the trial court also granted
Mrs. Moffatt=s
motion for partial summary judgment, construing the 1993 will and the 2001 will
to include the 25,000 shares of stock of Moffatt
Carpets, Inc.

On February 5,
2002, the trial court granted Mrs. Moffatt=s motion to sever out her cause of
action brought pursuant to the Uniform Declaratory Judgments Act.  In its order, the trial court found that Mrs.
Moffatt was entitled to reasonable and necessary
attorney=s fees in
the amount of $9,758.50 for bringing her declaratory judgment claim.  The trial court noted that on January 9,
2002, there had been a hearing on Mrs. Moffatt=s motion for attorney=s fees. 
In the same order, the trial court also made the partial summary
judgment in this cause final.[3]  A nunc pro tunc order was later entered on May 2, 2002, which changed
the cause number for the severed action to P13478.

DISCUSSION

Will
Construction








In Issue One, Ms.
Stickney contends the trial court erred in construing the word Astocks@
as used in the 1993 will.  Ms. Stickney
also argues that court should have looked to the extrinsic evidence presented
because the term Astocks@ as used in the will was susceptible to
more than one interpretation, which created a fact issue to defeat the motion
for summary judgment.

The movant for traditional summary judgment must establish that
there is no genuine issue of material fact and that the movant
is entitled to summary judgment as a matter of law.  See Tex.R.Civ.P. 166a(c); Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 

548-49 (Tex.
1985).  In determining whether
there is a disputed material fact issue precluding summary judgment, all
admissible evidence favorable to the non-movant will
be taken as true; every reasonable inference must be indulged in favor of the
non-movant and any doubts resolved in the non-movant=s
favor.  Nixon,
690 S.W.2d at 548-49; Collins v. County of El Paso, 954 S.W.2d 137, 145
(Tex.App.--El Paso 1997, pet. denied). 








Whether a clause
in a will is ambiguous is a question of law. 
See Sammons v. Elder, 940 S.W.2d 276, 280 (Tex.App.--Waco 1997, writ denied); Nail v. Thompson,
806 S.W.2d 599, 601 (Tex.App.--Fort Worth 1991, no
writ).  In construing a will, the
court must focus on the testator=s
intent.  San Antonio
Area Foundation v. Lang, 35 S.W.3d 636, 639 (Tex. 2000).  In so doing, A>[t]he intent must be drawn from the
will, not the will from the intent.=@ 
Id. at 640, citing Lehman v. Corpus
Christi Nat=l Bank,
668 S.W.2d 687, 688 (Tex. 1984); Huffman v. Huffman, 161 Tex. 267, 339
S.W.2d 885, 888 (1960).  In
determining the testator=s
intent within the four corners of a will, the court focuses not on what the
testator intended to write, but the meaning of the words actually used.  Lang, 35 S.W.3d at
639.  If the will is unambiguous,
the court should not go beyond the specific terms to ascertain the requisite
intent.  Id.  If a term is susceptible to more than one
construction, however, a court may look to extrinsic evidence Aconcerning the situation of the
testator, the circumstances existing when the will was executed, and other
material facts that will enable the court to place itself in the testator=s position at the time.@ 
Lang, 35 S.W.3d at 639, quoting Stewart v. Selder, 473 S.W.2d 3, 7 (Tex. 1971); see also Lehman,
668 S.W.2d at 688.  Extrinsic evidence
may not be used to create an ambiguity in a will when the words used are
unambiguous.  Lang, 35 S.W.3d at 640-41.

AStocks@

At the time of his
death, decedent held two stock certificates reflecting his ownership of 25,000
shares of Moffatt Carpets, Inc.  The following securities were held in a
brokerage account:  100 shares of
Exploration Company of Delaware; 20 shares of The Exploration Company; 20
shares of Exprofuels, Inc.; 4 shares of Exprofuels, Inc.; 12,500 shares of First Australia Prime
Income Fund, Inc.; 4,000 shares of Interditigal
Communications Corp.; and 1,000 shares of Ridgeway Petroleum Corporation.  Decedent=s
Individual Retirement Account (IRA) included the following securities:  4,204 shares of First Australian Prime Income
Fund, Inc.; 1,000 shares of Interditigal
Communications Corp.; and $3,033.82 in a Pershing Government money market
account.

On appeal, Ms.
Stickney argues that the word Astock@ as used in the 1993 will was
susceptible to more than one interpretation.  We understand from Appellant=s brief her argument to be that under
one interpretation, Astock@ includes the Moffatt
Carpets business, which she concedes is a corporation, and under the other
reasonable interpretation, Astock@ means stock purchased through a
broker, that is, publicly traded stock. 
In oral argument, Appellant clarified her argument contending the word Astock@
as used in the context of the 1993 will without embellishment should be treated
as ambiguous.








In Black=s Law Dictionary, Astock@
with respect to corporations is defined as A[t]he
capital or principal fund raised by a corporation through subscribers= contributions or the sale of shares@ and alternatively, A[a] proportional part of a corporation=s capital, represented by the number of
equal units (or shares) owned, and granting the holder the right to participate
in the company=s general
management and to share in its net profits or earnings.@  Black=s Law Dictionary 1428 (7th ed. 1999).  A Astock
certificate@ or Ashare certificate@ is defined as A[a]n
instrument evidencing ownership of a bond or shares of stock.@ 
Id. at 1430.  With respect to stock, a Asecurity@
is defined as A[a]n
instrument that evidences the holder=s
ownership rights in a firm (such as a stock).@  Black=s Law Dictionary at 1358.  In Kenney v. Porter, the Corpus
Christi court of appeals examined the question of whether stock of a closely
held corporation met the statutory definition of a security such that it was
subject to provisions of the Texas Business and Commerce Code.  Kenney v. Porter, 604 S.W.2d 297, 300
(Tex.Civ.App.--Corpus Christi 1980, writ ref=d n.r.e.); see
also Gannon v. Baker, 830 S.W.2d 706, 710 (Tex.App.--Houston
[1st Dist.] 1992, writ denied)(stock of a closely held
corporation is a security subject to the provisions of the Texas Business and
Commerce Code).  The Kenney court
noted that:

[D]raftsmen=s comments to the 1997 revision of the
Code specifically include stock of a closely held corporation as a
security:  >(i)nterests
such as the stock of closely‑held corporations, although they are not
actually traded upon security exchanges, are intended to be included within the
definitions of certificated and uncertificated
securities by the inclusion of interests Aof
a type@ commonly
traded in those markets.=  The controlling section of the statute is the
phrase >of a
type,= which
signifies that the instrument or stock need not be actually traded on a
securities exchange or market but rather requires only that the stock be
similar to instruments traded upon such markets.

 

Kenney, 604
S.W.2d at 301.








From the Kenney
opinion, it appears that at least for classification purposes, under the legal
definition, stock is a security, without distinction as to what particular type
of stock it may be.

In this case, the
1993 will devises to Mrs. Moffatt Aall stocks, bonds and securities owned
by me at the time of [decedent=s]
death . . . .@  When a court can give a Acertain or definite legal
meaning or interpretation@
to the words in an instrument, then the instrument is not ambiguous and the
court will construe it as a matter of law. 
Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983); Myrick v. Moody, 802 S.W.2d 735, 738 (Tex.App.--Houston
[14th Dist.] 1990, writ denied). 
On the face of the will, there is nothing to indicate any intent to
limit the meaning of the term Astock@ to the type of stock which is publicly
traded.  See Lang, 35 S.W.3d at
641; see also Floyd v. Floyd, 813 S.W.2d 758, 761 (Tex.App--El Paso 1991, writ denied)(AAn unambiguous will must be construed
based upon the express language used therein, not upon extrinsic evidence nor
upon speculation or conjecture on what the testator may have intended.@). 
Courts may not redraft the will, vary, or add provisions under the guise
of construction to reflect some presumed intent of the testator.  Shriner=s Hosp.
for Crippled Children of Texas v. Stahl, 610 S.W.2d 147, 151 (Tex. 1980).  The term Astocks@ as used in decedent=s will is not ambiguous, therefore
there is no need to look to extrinsic evidence to determine the decedent=s intent.  We conclude the trial court did not err in
construing the 1993 will to include the 25,000 shares decedent held in Moffatt Carpets, Inc. and in granting summary judgment in
the will construction cause of action. 
We overrule Issue One.

Attorney=s Fees








In her second
issue, Ms. Stickney argues the trial court erred in awarding $9,758.50 in
attorney=s fees
because the matters addressed by the declaratory judgment pleading were already
before the Court as part of the probate dispute.  Ms. Stickney also contends there is no
evidence in the record to support the awarded attorney=s
fees.

Under the Uniform
Declaratory Judgments Act, the trial court may award Areasonable
and necessary attorney=s
fees as are equitable and just.@  Tex.Civ.Prac.&Rem.Code Ann. ' 37.009
(Vernon 1997).  The granting or denial of
attorney=s fees in
a declaratory judgment action lies within the court=s
sound discretion.  Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998).  We
review the trial court=s
determination for an abuse of discretion, that is,
whether the court ruled arbitrarily, unreasonably, or without regard to guiding
legal principles, or ruled without supporting evidence.  Id.; Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  The reviewing court must make a factual
determination as to the reasonableness and necessity of the fees awarded and a
legal determination as to whether the fee is equitable and just.  Columbia Rio Grande
Regional Hosp. v. Stover, 17 S.W.3d 387, 397 (Tex.App.--Corpus
Christi 2000, no pet.).  Absent a
clear showing of an abuse of discretion, we should not reverse the trial court=s award on attorney=s fees. 
Oake v. Collin County, 692
S.W.2d 454, 455 (Tex. 1985)

In her second
issue, Ms. Stickney argues Mrs. Moffatt was not
entitled to attorney=s
fees as a matter of law because the matters addressed by her pleading for
declaratory judgment were already before the court as part of the probate
dispute.  Ms. Stickney asserts that if
either will was admitted for probate, the meaning of the word Astocks@
would necessarily have been resolved or been held moot, therefore the
declaratory relief claim was duplicative and an inefficient use of judicial
resources.








A party may not
seek declaratory relief to settle issues already pending before a court. BHP Petroleum Co., Inc. v. Millard, 800 S.W.2d 838, 841
(Tex. 1990).  Here, Mrs. Moffatt=s
original pleading was an application to probate the 2001 will and for issuance
of letters testamentary.  The trial court
consolidated her application to probate decedent=s
2001 will with Ms. Stickney=s
pending application to probate the 1993 will. 
The pending action was in effect a will contest.  Mrs. Moffatt later
amended her application to probate the 2001 will to plead a second cause of
action for declaratory relief, requesting will construction, an issue not
already pending before the court.  Mrs. Moffatt=s
amended pleading included a request for reasonable and necessary attorney=s fees for bringing a will construction
cause of action pursuant to Tex.Civ.Prac.& Rem.Code Ann. '
37.009.  Mrs. Moffatt=s action clearly fell within the Act=s provisions for awarding of attorney=s fees in will construction
actions.  See Tex.Civ.Prac.& Rem.Code Ann. ' 37.005 (Vernon Supp. 2003). 








Ms. Stickney also
argues there is no evidence in the record to support the awarded attorney
fees.  We observe that the motion for
partial summary judgment did not address the request for attorney=s fees in the initial pleading.  Prior to final summary judgment in this cause,
however, the trial court held a hearing on the remaining issue of reasonable
and necessary attorney=s
fees.  The record of that hearing does
not appear in the record before this Court. 
As Ms. Stickney is the party seeking review of the trial court=s award of attorney=s fees, she has the burden of
presenting to this Court a record showing that the trial court abused its
discretion.  See Thomas
v. Thomas, 902 S.W.2d 621, 626 (Tex.App.--Austin
1995, writ denied).  No findings
of fact and conclusions of law were requested or filed in this cause.  Absent a record and statement of facts on the
issue of attorney=s fees,
we must presume that sufficient evidence was introduced to support the trial
court=s award
of attorney=s fees
and conclude that the trial court did not abuse its discretion.  Simon v. York Crane &
Rigging Co., Inc., 739 S.W.2d 793, 795 (Tex.
1987); Thomas, 902 S.W.2d at 626.  Issue Two is overruled.

For the reasons
stated above, we affirm the trial court=s
judgment.  

 

 

October 23, 2003

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.











[1]
Ms. Stickney was one of several respondents to the summary judgment.  Though respondent Larry Brandt joined Ms.
Stickney in filing a notice of appeal, Ms. Stickney is the only Appellant who
filed a brief in this cause and who appeared at oral argument.





[2]
In the 2001 will, decedent wrote:

 

This is my last will and testiment [sic] I hearby [sic]
leave all of my earthly possessions to my loving wife Leslie Moffatt.  This encludes [sic] all bank accounts[,]
stock accounts, real estate, Moffatt Carpets, & McLode Spirits, and life insurance policy.  This is not to cut my children out of the
will but because Tambera, Dana, & Susan all have
husbands to take care of them and Brandt is self sufficient.  I would like to be buried near Mother & Dad in Lamesa.

 

On appeal, Appellant Stickney
limits her complaint to the trial court=s
construction of the 1993 will and does not challenge the court=s construal of the 2001 will.





[3]
On October 19, 2001, Mrs. Moffatt filed a motion for
severance, requesting that the court sever the will construction cause of
action so that the partial summary judgment could be made final.