

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00003-CV
_____


ROBERT ANDRESAKIS, APPELLANT

V.

BENJAMIN ALEXANDER MODISETT, CORI ANNE MODISETT, HCSB, AND
STEPHEN A. ABLES, APPELLEES

_____

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2015-514,161, Honorable William C. Sowder, Presiding

_____

January 4, 2017

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


This case concerns the construction of two trust agreements. Appellant and beneficiary Robert Andresakis ("Andresakis") sued appellees Benjamin Alexander Modisett and his sister Cori Anne Modisett, along with the trustees,[1] for a judgment declaring that the Modisetts are not beneficiaries of any trust under either trust

_____

[1] Pleadings in the case indicate the trustees are HCSB, now known as Centennial Bank, and Stephen B. Ables. The trial court judgment lists HCSB and Ables among the defendants.

agreement.  Andresakis moved for summary judgment on that ground and the Modisetts filed a cross-motion for summary judgment seeking a declaration of their beneficiary status.  The trial court granted the Modisetts' motion.  The Modisetts then moved for a summary judgment declaring their trust interests vested in October 2014.  The trial court disagreed and in its final judgment fixed a vesting date six months later, in April 2015.  Both sides filed notice of appeal.  Andresakis appeals the trial court's determination that the Modisetts are beneficiaries, while the Modisetts challenge the date-of-vesting declaration.  Finding no error in the trial court's declarations, we will affirm its judgment.

## Background

In 1976 and again in 1981, Floyd A. Cailloux and Kathleen L. Cailloux ("the trustors"), executed an *inter vivos*, irrevocable trust agreement.  Each agreement created three trusts, one for the trustors' daughter Paula L. Andresakis, one for their son Kenneth F. Cailloux, and a third trust for their only grandchild, appellant Andresakis. The agreements provided, however, for additional separate trusts benefiting "any grandchild subsequently born to or adopted by [Paula L. Andresakis or Kenneth F. Cailloux] and who survives for a period of at least six (6) months."  Under the instruments, any such additional trust for a later-born or later-adopted grandchild of the trustors was to be funded by partitioning assets from the trust estate benefitting Andresakis, such that thereafter the trust estates benefitting each of the trustors' grandchildren would have equal value.

As is pertinent to this case, the provisions of the 1976 and 1981 trust agreements are alike. We will quote from the 1976 agreement. Paragraph 4 of the agreement addresses the trusts created for grandchildren:

4. The Trust created hereby for such grandchild (and any Trust created for any grandchild born to or adopted by either of such children subsequent to the date of this Agreement, if any such Trust is created pursuant to the terms of this Paragraph 4) and the Trust Estate of such Trust (including any property which is subsequently added to such Trust) shall be held on the following terms during the existence of the Trust, as well as on all other applicable terms of trust in this Trust Agreement:

(A) The Trustees shall pay to or apply for the benefit of such grandchild such amounts out of the net income and principal (if income is insufficient) of the Trust held for such grandchild as, in the sole, reasonable discretion of such Trustees, are necessary or advisable for the health, support, education and maintenance of such grandchild . . . .

(B) If a child is hereafter born to or adopted by either of such children and who survives for at least six (6) months after birth or the decree granting the adoption, the Trustees shall set apart (such setting apart being hereinafter referred to as "partition") from the Trust Estate or Trust Estates of the Trust or Trusts then in existence under this Paragraph 4 a part of the property comprising such Trust Estate or Trust Estates, which property shall thereafter be held and administered as a separate Trust hereunder for the use and benefit of such after-born or after-adopted grandchild. The value of the property so set apart and the proportions in which it shall be made up from the Trust or several Trusts then in existence hereunder shall be determined by the Trustees and, except as is hereafter provided, shall be such that, as nearly as is possible, the value of the property held in trust hereunder for any grandchild shall be the same as the value of property so held in trust for each other grandchild and the value of property so held in trust for the issue of a deceased grandchild hereunder.

In effecting a partition under the provisions of this Paragraph 4 and in determining the value of any property held in trust hereunder for such purpose, the Trustees shall take into account such liabilities as may be a charge upon or payable out of any property so held in trust and may, as Trustees of any Trust which comes into existence hereunder for the use and benefit of any such after-born or after adopted grandchild, assume part or all of the liabilities which are a

3

charge upon or are payable out of any property or interest in property set apart to such Trust.

* * *

The purpose of this Paragraph 4 is that, in the event one or more children are hereafter born of or adopted by either of such children, upon each such birth or adoption of a grandchild a Trust hereunder shall come into existence for the use and benefit of the grandchild so born or adopted, and immediately thereafter the value of the property held in the several Trusts then in existence under this Paragraph 4 shall be the same as if the grandchild so born and any other grandchildren theretofore born to or adopted by either of such children after the date of this instrument had been in fact born to either such child prior to the date of this instrument, and as if Trustors had by this instrument created separate Trusts for use and benefit of all of the children born of or adopted by Trustors' children and who survive for at least six (6) months, consisting of equal shares in the property described in Exhibit "A" hereto, and this Paragraph 4 shall be construed accordingly.[2]

* * *

Paragraph 2 of the agreement states that by the phrase "such children," the trustors are referring to their two children Paula L. Andresakis and Kenneth F. Cailloux. It refers to Andresakis as "such grandchild," but goes on to say, "At present Trustors' only grandchild is Robert Stephen Andresakis; however, the term 'such grandchild' shall also refer to any grandchild subsequently born to or adopted by either of such children and who survives for a period of at least six (6) months."

Paragraph 15(D) of the trust agreement defines certain terms. It states the terms "child" and "children," refer "only to legitimate sons and daughters of the person in question." Significantly, the paragraph further states its terms "refer, wherever

---

[2] The property described in Exhibit "A" to each agreement appears to consist of shares of corporate stock.

appropriate, to those who are adopted, whenever adopted, but shall not refer to step-children, unless legally adopted."

In 1998, Kenneth Cailloux married his wife Sandra Carr Cailloux and thereby became the step-father of her two children, the Modisetts. Both the Modisetts were over the age of eighteen when their mother and Kenneth Cailloux married.

In October 2014, Kenneth Cailloux adopted the Modisetts in a proceeding in Kerr County, Texas, and notified the trustees of their adoption. Andresakis filed his suit for declaratory relief in January 2015. After the trial court made the rulings we have noted, the appeals were filed.

Analysis

Standard of Review and Rules of Construction

An appellate court reviews a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c). When parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, a reviewing court considers the summary judgment evidence supporting both motions and "render[s] the judgment the trial court should have." *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013).

Identical rules apply to the construction of trusts and wills. *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied); *see San Antonio Area Found. v. Lang*, 35 S.W.3d 636 (Tex. 2000) (construction of will). The construction of an unambiguous trust instrument is a question of law for the trial court. *Hurley v. Moody Nat'l Bank of Galveston,* 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A trust instrument is construed to determine the intent of the settlor from the language of the four corners of the instrument. *Eckels v. Davis,* 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). All terms are harmonized to give proper effect to each part of the instrument. *Id.* The instrument should be construed, if possible, so that effect is given to all provisions and no provisions are rendered meaningless. *Myrick v. Moody*, 802 S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Provided the language of the instrument unambiguously expresses the settlor's intent, there is no need to construe the instrument because "it speaks for itself." *Ellison Grandchildren Trust*, 261 S.W.3d at 117; *see Keisling v. Landrum,* 218 S.W.3d 737, 741 (Tex. App.—Fort Worth 2007, pet. denied) (stating and applying rule that when unambiguous language in a trust instrument expresses the settlor's intent construing the instrument is not necessary because it speaks for itself). An instrument is ambiguous if its meaning is uncertain or reasonably susceptible to more than one meaning. *Myrick,* 802 S.W.2d at 738.

Andresakis' Appeal

In his issue, Andresakis argues, "[t]he trial court erroneously determined that the trust declarations unambiguously expressed the [trustors'] intent to include adult

6

adoptees in the class of the beneficiaries of their gifts to any child subsequently born to or adopted by their son."

Concerning the trustors' intent to make a gift to after-born or after-adopted children, Andresakis focuses on the term "grandchild" as used in the trust agreements. According to Andresakis, the term grandchild is repeatedly modified in the trust agreements by phrases such as "subsequently born to or adopted by," and "hereinafter born to or adopted by" either of trustors' children. Thus, Andresakis continues, construing the gifts given by the trustors to the class of their grandchildren requires ascertaining the intended meaning of the phrase "any [child] subsequently born to or adopted by either of [their] children." Focusing on the concept that class gifts are given by donors to members sharing common characteristics, Andresakis asserts the common characteristic of a class consisting of a child subsequently born to or adopted by one of the trustors' children is a parent-child relationship with one who "materially participate[s] in the child's upbringing, provide[s] support, and recognize[s] the child as his own." In other words, Andresakis reasons, the trustors intended the class of subsequently adopted children to consist only of children adopted before attaining majority. Andresakis finds support for his reading in the provisions of the agreements empowering the trustees to make discretionary distributions to or for a grandchild; the provisions contain language authorizing distributions in an amount "necessary or advisable for the health, support, education and maintenance" of the grandchild, and language requiring the trustees to consider, among other things, the ability of any person who is "legally obligated to support such beneficiary," when making distributions.

Andresakis also presents argument, largely founded on *Ellison Grandchildren Trust,* 261 S.W.3d 111, urging that we consider, in our reading of the trust agreements, differences in the Texas statutory provisions for adoption of children and those authorizing an adult's adoption of an adult person, as they existed when the agreements were executed. In *Ellison Grandchildren Trust*, the court affirmed the trial court's declaration that the term "descendants," as used in the trust instrument there under consideration, did not include any adopted adult person. *Id.* at 116. In its analysis, the appeals court carefully examined the statutory development of inheritance rights of adopted children and adopted adult children. The court relied in part on the 1975 statute as an aid to construction and concluded that in 1982 the settlor did not intend the term "descendants" to include persons adopted as adults. 261 S.W.3d at 126.

Andresakis's arguments are not persuasive. We cannot agree that any language of the trust agreements indicates an intention of the trustors to limit adopted grandchild beneficiaries to those adopted as minors. We agree instead with the trial court that the agreements unambiguously[3] express the contrary intention, that individuals who become grandchildren of the trustors by adoption are beneficiaries, "whenever adopted." That the sentence containing the phrase, "whenever adopted," specifically addresses the adoption of step-children further affirms its application to the Modisetts' adoption by Kenneth Cailloux.

---

[3] As an alternative argument, Andresakis urges that the definition of "grandchild" used by the trust agreements is ambiguous. That is, grandchild may refer to a minor or may broadly include a person of any age. With regard to the qualification of an adult person adopted as a grandchild to meet the agreements' definition of "such grandchild," we do not agree that the trust agreements are susceptible to two or more reasonable meanings. *See Myrick,* 802 S.W.2d at 738.

With regard to *Ellison Grandchildren Trust,* the court there made clear that "the grantor's intent controls and . . . a statute cannot control or defeat a trust's 'true construction.'" 261 S.W.3d at 121 (quoting *Vaughn v. Vaughn*, 161 Tex. 104, 109, 337 S.W.2d 793, 796 (1960)). It noted, however, that the trustor Mr. Ellison used the term "descendants" without defining the term, and the court would thus presume he knew what the law then considered the term to encompass. *Id.* In the case before us, in the matter of the trustors' intent regarding the inclusion as beneficiaries of grandchildren adopted as adults, we need not employ aids to construction. And, in any event, application of such a rule of construction "would yield to a clear expression of contrary intent." *Lehman v. Corpus Christi National Bank,* 668 S.W.2d 687, 688 (Tex. 1984). We find that, with regard to adopted grandchildren, the 1976 and 1981 trust agreements contain such a clear expression of the trustors' intent that the instruments speak for themselves. *Ellison Grandchildren Trust*, 261 S.W.3d at 117; *Keisling,* 218 S.W.3d at 743. By the language of paragraphs 2 and 15(D) of the agreements, a person "adopted by either of such children and who survives for a period of at least six (6) months" is a grandchild, "whenever adopted."

We overrule Andresakis's issue on appeal.

The Modisetts' Appeal

In their issue the Modisetts argue their trust estates vested on October 27, 2014, the date of their adoptions. Andresakis contends, and the trial court found, that they vested six months after that date.

9

As with the previous question, our task is to determine the trustors' intent from the language they employed in the agreements, harmonizing provisions where necessary, and giving effect to all provisions if possible. *Eckels,* 111 S.W.3d at 694; *Myrick*, 802 S.W.2d at 738. As before, we quote from the 1976 agreement, but the 1981 agreement's language is the same.

The Modisetts emphasize the words "immediately thereafter," which appear in the language stating the "purpose of this Paragraph 4." They argue the phrase "immediately thereafter" refers to the creation of a new trust immediately after the date of birth or adoption of an additional grandchild. For several reasons, we disagree. First, it must be remembered that, under the language of the agreement's paragraph 2, the term "such grandchild" refers only to an individual born to or adopted by either of the trustors' children "and who survives for a period of at least six (6) months." And, the explicit language in paragraph 4(B) instructing the trustees to "set apart" or "partition" assets to constitute the trust estate of a newly-created trust makes clear that the partition occurs only for the benefit of a grandchild who survives birth or adoption by at least six months: "If a child is hereafter born to or adopted by either of such children and who survives for at least six (6) months after birth or the decree granting the adoption, the Trustees shall set apart (such setting apart being hereinafter referred to as "partition") from the Trust Estate or Trust Estates of the Trust or Trusts then in existence under this Paragraph 4 a part of the property comprising such Trust Estate or Trust Estates, which property shall thereafter be held and administered as a separate Trust hereunder for the use and benefit of such after-born or after-adopted grandchild."

10

Finally, viewed in light of these provisions, it is equally clear that the "immediately thereafter" language in the "purpose of this Paragraph 4" paragraph does not address the timing of the creation of new trusts or the partitioning of a trust estate for a new trust, both of which are unequivocally addressed by the noted prior provisions. Instead, the language addresses the intended result of the actions the trustees are directed to take. The language declares that in the event a new grandchild is born or adopted, a trust for the new grandchild's benefit shall come into existence, "and immediately thereafter the value of the property held in the several Trusts then in existence under this Paragraph 4 shall be the same as if" the beneficiary of the newly-created trust had been born before the date of the trust agreement and the newly-created trust had been created and funded on the execution of the agreement. As is obvious, there will be no "property held" in a newly-created trust until the trustees accomplish the partitioning. And under the language of paragraph 4(B), the partitioning does not occur until the new grandchild "survives for at least six (6) months after birth or the decree granting the adoption." The "immediately thereafter" language the Modisetts emphasize does not support the position their beneficial interest vested on the date of their adoption; the language instead supports Andresakis's position that their interest vested six months later.

The Modisetts also argue principles discussed in *Quilliams v. Koonsman,* 154 Tex. 401, 279 S.W.2d 579, 582-83 (1955), support their position. Because the first paragraph of the 1976 and 1981 agreements vests the trust assets in the trustees without qualification, the Modisetts argue, their beneficial interest also was vested on the date of their adoption, subject to divestiture if they had not survived their adoption by six months. We find no merit in the argument. It conflates the vesting of legal title in the

trustees with the equitable interests of the beneficiaries. *See Ditta v. Conte,* 298 S.W.3d 187, 191 (Tex. 2009) (citing TEX. PROP. CODE § 111.004(4)) (definition of "express trust"); *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.,* 748 S.W.2d 218, 220 (Tex. 1988) (hallmark of trust is separation of legal and equitable estates in the trust property); TEX. PROP. CODE ANN. § 112.034 (West 2014) (consequences of merger of legal title and all equitable interests in trust property). Moreover, even under the rule discussed in *Quilliams*, 279 S.W.2d at 582, as we have noted, in paragraph 2 and elsewhere, the agreements require a grandchild to survive birth or adoption by six months to attain beneficiary status. By those provisions, the survival requirement is incorporated into the gift, making it contingent rather than vested. *Id.*

The trial court did not err by declaring the April date of vesting. The Modisetts' issue is overruled.

## Conclusion

Having overruled the issues raised by Andresakis and the Modisetts, we affirm the judgment of the trial court.


James T. Campbell
Justice


12