Jacqueline **MOODY**, Appellant,

v.

Helen Marion **PITTS, et al.,** Appellees.

No. 13–85–356–CV.

Court of Appeals of Texas,
Corpus Christi.

April 17, 1986.

J.D. Sherlock, Jr., Austin, for appellant.

Richard Davis, Harlingen, for appellees.

Before NYE, C.J. and KENNEDY and DORSEY, JJ.

### OPINION

NYE, Chief Justice.

This case involves the construction of a will. Appellant, Jacqueline Pitts Moody, is the daughter of the testator, Johnny T. Pitts. She brought this action against appellees: Helen Marion Pitts (her mother and the wife of testator), William Terry Pitts (her brother) and his wife, and Geraldine Pitts Floyd (her sister) and her husband. The fourth child of Johnny and Helen Pitts is not a party to this action. Suit was brought to invalidate the testamentary trust created by the will, to declare void conveyances of certain real estate, to impose a constructive trust on appellant's purported share of the transferred real estate, for an accounting, and for the removal of the trustee. Appellant appeals from a take-nothing judgment. We reform and, as reformed, affirm.

Testator executed his will on July 23, 1973, and died September 2, 1976. The will was probated on September 30, 1976. It made a direct bequest to Helen Pitts (his wife) and devised the remainder of his estate (particularly certain real estate) to a trustee (Helen Pitts) in trust for the wife, Helen Pitts, for life with the remainder to their four children. On November 24, 1976, three of the children conveyed their remainder interest in the real property, which was subject to the trust, to their mother, Helen Pitts. Appellant (Jacqueline Pitts Moody, a daughter) refused to convey her interest to her mother. Between December 1976 and March 1977, Helen Pitts (as trustee, as executor, and as an individual) conveyed several pieces of real property which were part of the corpus of the trust to her son William and his wife and her daughter Geraldine and her husband.

The portions of Johnny T. Pitts' will relevant to this appeal are as follows:

### ARTICLE THREE

All of the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, tangible and intangible, ... I give, devise and bequeath to my Trustee, hereinafter named, IN TRUST NEVERTHELESS, for the following uses and purposes:

I. I direct my Trustee to hold, manage, control, invest and reinvest the same, to collect the income therefrom and to pay the net income therefrom to my beloved wife, Helen, so long as she shall live, in monthly or other convenient installments.

II. I further direct that my Trustee may, in her discretion, at any time and from time to time, pay over to or apply for the benefit of my wife so much or all of the principal of the Trust as will, when coupled with the income of the Trust, *support her in her accustomed manner of living and pay her medical, dental, hospital and nursing expenses of invalidism. Restoration of principal in case of such invasion shall not be required as a condition of further distribution of income.* In determining the amounts of principal to be so disbursed, my Trustee *shall take into consideration the other income resources, but not capital resources, of such beneficiary.*

III. Upon the death of my beloved wife, Helen, ... I then give, devise and bequeath all of the rest, residue and remainder of my Estate to my children, namely Geraldine Pitts Floyd, ... Johnny T. Pitts, Jr. ... William Terry Pitts ... and Jacqueline Pitts Melton ... in equal shares, *per stirpes;* ... (Emphasis in the original.)

### ARTICLE FOUR

I nominate, constitute and appoint my beloved wife, Helen Marion Pitts, as *Independent Executrix and as Trustee,* without bond, under this, my Last Will and Testament, and I direct that no other action shall be had in the County Court or other probate court in relation to the

settlement of my Estate than the probating and recording of this, my Will, and return of statutory Inventory, Appraisement and List of Claims of my Estate. In event of the death, resignation, inability or refusal of my said Executrix and Trustee to act in either capacity, I then nominate, constitute and appoint my son, Johnny, and daughter, Jacqueline, to act as Substitute Independent Co-Executors and as Successor Co-Trustees, as the case may be, without bond, and grant such Successors all of the rights, powers and duties of the original fiduciary, without any act of conveyance or transfer....

\* \* \* \* \* \*

### ARTICLE FIVE

No beneficiary of any Trust created hereunder shall have any right to anticipate, alienate, encumber or hypothecate his or her interest in the principal or income of such Trust in any manner, nor shall the interest of any such beneficiary be subject to the claim of his or her creditors, or liable to attachment, garnishment, execution and other process of law. Title to all such principal and income shall remain solely and exclusively in my Trustees until actually distributed by my Trustees to such beneficiary under the terms of the instrument.

*I direct that my Executors with respect to my Estate and my Trustees with respect to any Trust herein created shall have, and they are each hereby invested with the administrative powers set forth in Annex A to this, my Will, which is attached hereto, ... which powers may be exercised by my Executors and my Trustees at any time or from time to time as they, in their sole discretion, deem advisable.*

\* \* \* \* \* \*

### ANNEX A

To the Last Will and Testament of
 Johnny Thomas Pitts

ADMINISTRATIVE POWERS GRANTED TO MY *EXECUTOR* AND TRUSTEE AND TO THE SUBSTITUTE OR SUBSTITUTES AND THE SUCCESSOR OR SUCCESSORS OF THEM:

\* \* \* \* \* \*

4. *To sell, exchange, assign, transfer, partition, or otherwise dispose of any property, real* or personal, of which I may die seized or possessed, or which may at any time form part of my estate or the trust created hereby, at public or private sale, *for such purposes and on such terms,* including sales on credit, with or without security, *in such manner and at such prices as to my fiduciary appears advisable.*

\* \* \* \* \* \*

28. Except as may be otherwise expressly provided in my Will, *whenever my fiduciary* is required *or permitted to* divide or *distribute my estate or any trust* created hereby, *to make such division or distribution in money or in kind,* or partly in money and partly in kind; *to allot different kinds of property among the beneficiaries; and to determine the relative value of the property so allotted, and, in the absence of a showing of bad faith, the valuation assigned by my fiduciary of assets for the purpose of distribution in kind shall be conclusive and binding upon all persons interested in my estate.* (Emphasis added.)

Appellant testified that she and the other members of the family had an understanding as to how the real property should be divided among the children. According to appellant, her brother William was to get a one hundred and ninety-nine-acre tract. Geraldine was to get one hundred acres, and their other brother was to get the homesite (approximately 57 acres). Appellant was to get one hundred and eighty acres, consisting of a one hundred and sixty-acre block and a twenty-acre block with a two-story house, in which her sister Geraldine was living at the time of their father's death.

It was appellant's testimony that her mother initially stated that appellant was to get the one hundred eighty acres, but

then retracted because Geraldine wanted the twenty acre portion and two-story house. Appellant felt this was unfair and refused to join her brothers and sister in conveying their remainder interests to their mother. On cross-examination, appellant answered negatively when asked whether she would have objected had her mother conveyed the one hundred eighty acres to her. Appellant answered affirmatively when asked if she understood that her father's will provided for an equal division of the property among the children and did not provide that certain children would receive certain portions of the property.

In its judgment, the trial court ordered that (1) the trust under the will failed due to a merger of legal and equitable titles during the lifetime of Helen Pitts; (2) the will created a life estate in Helen Pitts by which she was vested with all the powers set forth in Exhibit A of the will; (3) Helen Pitts correctly disposed of the assets of the estate; (4) the conveyances of the real property to William and Geraldine were valid; and (5) Jacqueline Moody retains a one-fourth remainder interest in the estate of her father as it exists at the time of Helen Pitts' death. All other relief was denied, and all costs were adjudged against appellant.

By their sole cross-point, appellees contend that the trial court erred in holding there was a merger of the two estates which resulted in the failure of the testamentary trust because there existed an outstanding equitable interest in the remaindermen that, as a matter of law, prevented a merger of the estates. We agree with appellees and sustain this cross-point.

■ It is a well-settled principle that where a greater estate and a lesser estate are united in the same person, the estates merge, and the lesser is absorbed by the greater. *Olivas v. Zambrano,* 543 S.W.2d 180, 182 (Tex.Civ.App.—El Paso 1976, no writ); *Cole v. Grigsby,* 35 S.W. 680, 690 (Tex.Civ.App.1894), *affirmed,* 89 Tex. 223, 35 S.W. 792 (1896); 34 Tex.Jur.3d, *Estates* § 49 (1984). This rule is applicable to trusts. TEX. PROPERTY CODE § 112.-034 (Vernon 1984); *see also* RESTATE-MENT (Second) OF TRUST § 99 (1959). Where one person has both the legal title to the property and the entire beneficial interest, he holds it free of trust. There is no separation of the legal and beneficial interests, and there are no duties to assume or to provide.

■ It is also plain from the will that Helen Pitts is the life beneficiary under this trust, which is terminated at her death with the remaining corpus to be distributed to the remaindermen (the four children). The children's future interests under this will are vested remainders. Vested remainders are fixed interests with a present right of future enjoyment with only the right of possession postponed until the ending of a particular estate. *Caples v. Ward,* 107 Tex. 341, 179 S.W. 856, 857–58 (1915).

■ Thus, when the testamentary trust in this case became operative, there existed four persons with vested remainder interests in the residuary estate. Even after three of the children conveyed their remainder interests to their mother, a vested remainder still existed. At no time since the death of the testator has Helen Pitts owned the legal title and all of the equitable interest in all of the trust property. There has been a vested remainderman to whom Helen Pitts has had a duty as trustee, and who can maintain an action against her for her acts as trustee, as evidenced by the instant litigation. *See* TEX. PROPERTY CODE ANN. §§ 113.151(b) and 111.-004(7) (Vernon 1984). The general rule is that courts will not allow a merger to defeat a vested remainder. *Olivas v. Zambriano,* 543 S.W.2d at 182; *Cole v. Grigsby,* 35 S.W. at 690.

Although appellant has argued that a merger resulted, it was her refusal to convey her equitable interest in the property to Helen Pitts that prevented a merger of the legal and equitable titles and ensured the viability of the testamentary trust. We hold that the legal and equitable interests have not completely merged so as to defeat this trust. *See First Church of Christ, Scientist v. Snowden,* 276 S.W.2d 571, 574

(Tex.Civ.App.—Beaumont 1955, writ ref'd n.r.e.).

Appellant brings eleven points of error to this court. These points are inartfully drafted. We have attempted to determine the substance of the complaints through the statements, authority and arguments under each point. We have discretion in such instances to consider faulty points of error. *Cleaver v. Dresser Industries,* 570 S.W.2d 479, 483 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); TEX.R.CIV.P. 422, *See also Pool v. Ford Motor Co.,* 29 TEX. SUP.CT.J. 301 (April 2, 1986). Essentially, appellant complains of each of the trial court's rulings (with the exception of the ruling that the trust failed due to a merger), and the trial court's refusal to impose a constructive trust on her share of the real property in her father's estate.

In her first five points of error, appellant complains of the trial court's rulings that Helen Pitts acted correctly in disposing of certain real property of the estate. Appellant's interpretation of the will seems to be that Helen Pitts was devised a life estate free of a trust (because of a merger), but the life estate was subject to the spendthrift provision of the trust prohibiting the beneficiary from alienating any trust assets. She specifically argues that Helen Pitts was not devised a life estate with the power to invade the corpus of the trust.

This argument completely ignores the second paragraph of Article Five of the will in which the testator vests the powers delineated in "Annex A" in the executor of the estate and the trustee of the testamentary trust, each position to which he named his wife. In this particular instance, it matters little whether Helen Pitts acted as executor or trustee. She had the same powers under the will and comparable fiduciary duties to the remaindermen whether she acted as trustee or executor.

 The primary objective in construing wills and trusts is to determine the intent of the maker. *Corpus Christi National Bank v. Gerdes,* 551 S.W.2d 521, 523 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The testator's intent must be ascertained from the four corners

of the will. *Farah v. First National Bank of Fort Worth,* 624 S.W.2d 341, 345 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.). If possible, we are to construe a will in such a way as to give effect to every provision of the will. *Gonzalez v. Gonzalez,* 457 S.W.2d 440, 443 (Tex.Civ.App.— Corpus Christi 1970, writ ref'd n.r.e.). If the language used by the maker of a will or trust is unambiguous, it is unnecessary to construe the instrument. *Gerdes,* 551 S.W.2d at 523. If the trustee's powers are unambiguously conferred by the instrument, neither the trustee nor the courts can add to or take away from the powers so conferred.

 Article Five of the will provides that no beneficiary of the trust may alienate trust property or their interest therein, that title shall remain exclusively in the trustee, and that the trustee shall have the power of sale (through "Annex A"). Helen Pitts conveyed the real property as trustee, as executor, and as an individual.

Based on the language used by the testator, there is no question that he intended his wife to wear three different hats in his testamentary scheme: executor, trustee, and life beneficiary. Clearly, his purpose was to provide for his wife's support "in her accustomed manner of living and [to] pay her medical, dental, hospital and nursing expenses and expenses of invalidism." He provided that she serve as executor and trustee without bond and with no more than minimum court supervision. As trustee, she had broad powers of sale and limited powers of invasion. We hold that the conveyances by Helen Pitts, as trustee, did not violate the spendthrift or other provisions of the testamentary trust.

The result is the same even if the authorization is limited, and only may be for the "purpose of meeting her expenses of life and to pay doctor or hospital bills incurred and necessary," as long as the invasion of principal was for the purposes provided for in the will and not done in bad faith. *Guest v. Bizzell,* 271 S.W.2d 472, 476 (Tex. Civ.App.—Eastland 1954, writ ref'd). The person challenging the exercise of the pow-

er to invade principal has the burden of showing it was exercised in bad faith or went beyond that authorized. If a life tenant exercises the power of sale, the proceeds of that sale are still part of the estate. The principal still exists, only its form changes. *Edds v. Mitchell*, 143 Tex. 307, 184 S.W.2d 823, 826 (1945). The proceeds of the sale which remain undisposed of at the time of the life tenant's death pass to the remaindermen unless the will provides otherwise.

In the instant case, there is no evidence of how much income, if any, the real property produced before the sales. It is entirely possible that the property did not produce any income. If so, its liquidation would be necessary in order to provide the life tenant funds for her support. At trial, Helen Pitts was asked if she gave the properties to her son and daughter. She answered: "I sold them." She answered affirmatively when asked if she received any monies for them. When asked where these monies had gone, she answered: "That's what I live off of."

Helen Pitts also testified that she had recently made improvements to her home. She added a garage and bedroom at an approximate cost of $30,000.00. She stated that the addition increased the number of bedrooms in her home from three to four. She was asked if it was her accustomed manner to live in four bedrooms, and she replied: "Well, I'm there by myself. I guess I can just go in any of them I want." It was undisputed that Helen Pitts had four children.

We hold that the testator intended his wife to have the power, as trustee, to convey the real property, and that she has not exceeded the authorizations in the will by so doing. Appellant's first through fifth points of error are overruled.

In her points of error six through ten, appellant complains of the trial court's ruling that appellant, if she survives her mother, retains a one-fourth remainder interest in the estate of Johnny Pitts as it exists at the time of her mother's death. Her argument here seems to be that her interest in the estate was a vested remainder and that it was error for the trial court to require that she survive the life tenant (her mother, the trustee) in order for her interest to vest.

The point at issue is whether appellant's remainder is completely indefeasible. The testator devised, after the death of the life tenant, the remainder of his estate to his four children in equal shares, per stripes. If a remainderman predeceases the life tenant, without issue of his body, the remainder interest would not pass to the remainderman's estate as contended by the appellant. *See Power v. Landram*, 464 S.W.2d 99, 101 (Tex.1970). The remainderman's interest is defeasible in that sense.

Appellant's remainder interest is also defeasible because it is subject to the life estate of Helen Pitts and the powers of sale and invasion of the trustee. The power of sale does not prevent the remainder interest from vesting. *Caples v. Ward*, 179 S.W. at 858. There is no uncertainty as to who will take, only as to the "quantity and value" of the principal left to be taken. *Id.*

It is true that a life tenant (and a trustee) has a fiduciary duty to the remaindermen not to destroy their remainders except as authorized by the terms of the will. *Maxwell v. Harrell*, 183 S.W.2d 577, 579 (Tex.Civ.App.—Austin 1944, ref'd w.m.). However, Helen Pitts, as trustee, was expressly empowered to sell the property and consume any principal necessary to maintain her in her accustomed standard of living. Appellant had the burden to bring forth evidence that her mother exceeded her authority. This, she has failed to do. Points of error six through ten are overruled.

In her eleventh point of error, appellant complains of the trial court's refusal to impose a constructive trust on her one-fourth share of the specific real property conveyed. Constructive fraud (necessitating a constructive trust) is defined as a breach of a legal or equitable duty which, regardless of moral guilt, the law considers

fraudulent because of its tendency to deceive others, violate confidence or injure public interests. *Becknal v. Atwood*, 518 S.W.2d 593, 598 (Tex.Civ.App.—Amarillo 1975, no writ).

 The only evidence of any breach of fiduciary duty in this case was the fact that Helen Pitts closed out the trust account and commingled that money with her own funds. If a trustee commingles trust funds with the trustee's own, the entire commingled fund is subject to the trust. *General Association of Davidian Seventh Day Adventists, Inc. v. General Association of Davidian Seventh Day Adventists*, 410 S.W.2d 256, 259 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.). When a trustee has commingled funds and has expended funds, the money expended is presumed to be the trustee's own. *Batmanis v. Batmanis*, 600 S.W.2d 887, 890 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Thus, upon Helen Pitts' death, all commingled funds in her bank account, along with any of the trust property not sold or consumed, will be subject to an undivided remainder interest among the children of the testator then surviving. Appellant's interest does not attach to certain specific property, only to the trust corpus, in whatever form, at the life tenant's death. Point of error eleven is overruled.

We reform the judgment of the trial court to hold: (1) that the testamentary trust under the will of Johnny Thomas Pitts did not fail due to a merger of the legal and equitable estates during the lifetime of Helen Marion Pitts; (2) that, under the will of Johnny Thomas Pitts, Helen Marion Pitts was the executor of the estate, life beneficiary of the testamentary trust, and the trustee of the trust, by which she was vested with all the powers set forth in "Annex A" of his will; and (3) that Jacqueline Moody, if she survives Helen Marion Pitts, retains an undivided defeasible vested remainder interest in the estate and testamentary trust of Johnny Thomas Pitts as it may exist at the death of Helen Marion Pitts. As reformed, the judgment of the trial court is affirmed.