

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00310-CV

**YATES ENERGY CORPORATION**, EOG Resources, Inc., Jalapeno Corporation, ACG3
Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., and Curry Glassell,
Appellants

v.

**BROADWAY NATIONAL BANK, TRUSTEE OF THE MARY FRANCES EVERS
TRUST**,
Appellee

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2015PC2618
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: August 3, 2022

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellants Yates Energy Corporation, EOG Resources, Inc., Jalapeno Corporation, ACG3

Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., and Curry Glassell appeal the

probate court's summary judgment in favor of appellant Broadway National Bank, Trustee of the

Mary Frances Evers Trust. We affirm the judgment in part and reverse and remand in part.

## BACKGROUND

This appeal, which is before us on remand from the Texas Supreme Court, involves a dispute over ownership of mineral interests in Gonzales and DeWitt counties that were once held by the Mary Frances Evers Trust. Broadway Bank served as trustee of the trust, which was established by Mary Frances Evers during her lifetime. Yates acquired its claimed interest in the subject minerals from Mary's son, Eben John Evers ("John"). EOG, Jalapeno, ACG3, Glassell Non-Operated Interests, and Curry Glassell all acquired their claimed interests from Yates.

Mary amended the trust several times before she died on September 3, 2003. The final version of the trust ("the Trust Amendment") specified that upon Mary's death, Broadway Bank, as trustee, was responsible for allocating the trust's assets to Mary's descendants. Mary's surviving descendants included her four children: Mariellen Evers Dyal, Sandra Evers Pierce, Jamie Evers Drago, and John. The Trust Amendment provided that John's share should be distributed to a special-needs trust to be used for John's benefit. The Trust Amendment further provided that if the special-needs trust did not terminate in John's lifetime, the corpus remaining at his death, if any, would be distributed to: (1) Jamie or her surviving descendants; and (2) Mike E. Dyal or his surviving descendants.

The record does not show whether Broadway Bank ever established the special-needs trust. However, in 2005, Broadway Bank, in its capacity as trustee, conveyed interests in the subject minerals to several of Mary's descendants, including John. The 2005 Mineral Deed conveyed an undivided 25% interest in the subject minerals to John in fee simple. In 2006, Broadway Bank executed a Correction Mineral Deed, which stated that the Trust Amendment "provided that the distribution to [John] would not be an outright distribution but, rather, a beneficial life interest only" and that the 2005 Mineral Deed had conveyed the subject minerals to John in fee simple "[b]y oversight." The 2006 Correction Mineral Deed purported to: (1) change John's interest in

the subject minerals from a fee simple interest to a life estate; and (2) convey the remainder interest in John's life estate to Jamie's descendants[1] and Mike E. Dyal. Broadway Bank signed the 2006 Correction Mineral Deed, but neither John nor any other parties to the 2005 Mineral Deed did so.

Broadway Bank filed copies of the 2006 Correction Mineral Deed in the Gonzales and DeWitt county land records. Because some of the mineral interests at issue in the 2006 Correction Mineral Deed had been leased to Yates, Broadway Bank sent copies of that instrument to Yates in November of 2006.

In 2012, John executed a royalty deed and an assignment of overriding royalty interest conveying his interest in the subject minerals to Yates. Yates then assigned some of the interests it acquired from John to EOG, Jalapeno, ACG3, Glassell Non-Operated Interests, and Curry Glassell.

In August of 2013, after the conveyances described above, a title attorney for EOG raised concerns about the validity of the 2006 Correction Mineral Deed. In response to these concerns, Broadway Bank executed and recorded an Amended Correction Deed. Unlike the 2006 Correction Mineral Deed, the 2013 Amended Correction Deed was signed by all the parties to the 2005 Mineral Deed, including John. Like the 2006 Correction Mineral Deed, the 2013 Amended Correction Deed conveyed only a life estate to John, identified specific remaindermen to take upon the termination of John's life estate, and stated that the 2005 Mineral Deed's fee simple conveyance to John was an "oversight" that was inconsistent with the Trust Amendment.

After John died on February 10, 2014, a dispute arose about who owned the subject minerals. On July 31, 2015, Broadway Bank filed suit in probate court against Yates, EOG,

---

[1] Jamie died on October 13, 2004.

Jalapeno, ACG3, Glassell Non-Operated Interests, Curry Glassell, and others,[2] seeking declarations that: (1) Yates had acquired only a life estate from John; and (2) when John died, his life estate terminated and the interests claimed by appellants passed to the remaindermen identified in the 2006 Correction Mineral Deed. In response, appellants asserted several affirmative defenses, including claims that they were bona fide purchasers. They also filed counterclaims seeking declarations that: (1) the 2005 Mineral Deed was binding and enforceable; and (2) the 2006 Correction Mineral Deed and the 2013 Amended Correction Deed were ineffective.

The parties sought summary judgment on their competing claims for declaratory relief. The motions filed by Broadway Bank, the remaindermen,[3] EOG, ACG3, and Glassell Non-Operating Interests specifically sought summary judgment on the appellants' bona fide purchaser defense. The probate court ultimately granted summary judgment in favor of Broadway Bank and the remaindermen, declaring: (1) the 2013 Amended Correction Deed was a valid instrument that granted John only a life estate in the subject minerals; (2) Yates received only a life estate in the interests it acquired from John; (3) Yates could not have conveyed any interest greater than a life estate to EOG, Jalapeno, ACG3, Glassell Non-Operated Interests, or Curry Glassell; (4) none of the appellants were entitled to protection as bona fide purchasers; and (5) the remaindermen owned the subject minerals after John's death. Yates, EOG, Jalapeno, ACG3, Glassell Non-Operated Interests, and Curry Glassell timely appealed.

In our original review, we reversed the probate court's summary judgment. *See Yates Energy Corp. v. Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr.*, 609 S.W.3d 140, 149–50 (Tex. App.—San Antonio 2018), *rev'd*, 631 S.W.3d 16 (Tex. 2021). We concluded that because

---

[2] In its final judgment, the probate court dismissed all claims asserted by and against several defendants who are not appellants here.

[3] The remaindermen's motion for summary judgment essentially tracked Broadway Bank's motion. Our discussion of Broadway Bank's motion therefore applies equally to the remaindermen's motion.

John conveyed his interest in the subject minerals to Yates and Yates subsequently conveyed those interests to others, section 5.029 of the Texas Property Code required the 2013 Amended Correction Deed "to be signed by the successors in interest to Broadway Bank, who were John and his siblings, as well as the successors and assigns to John, which was anyone who currently held an interest in the royalty at the time the 2013 Amended Correction Deed was signed." *Id.* at 148; *see also* TEX. PROP. CODE ANN. § 5.029. The Texas Supreme Court disagreed, holding that "section 5.029 is satisfied when all the original parties agree to sign the correction instrument" and the signatures of an original parties' heirs, successors, or assigns are not required if the original parties are available and agree to sign the correction instrument. *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 25–26 (Tex. 2021). The supreme court reversed our judgment and remanded this case for us "to consider the parties' arguments in light of the summary judgment ruling that neither Yates nor its assigns are bona fide purchasers." *Id.* at 29–30. On remand, we ordered the parties to submit supplemental briefing on, inter alia, the scope of the supreme court's remand.

**ANALYSIS**

*Scope of the Supreme Court's Remand*

The parties agree that the supreme court's remand requires us to consider whether some of the appellants are bona fide purchasers who are not bound by the 2013 Amended Correction Deed. *See id.*; *see also* TEX. PROP. CODE ANN. § 5.030(c) ("A correction instrument is subject to the property interest of . . . a subsequent purchaser for valuable consideration without notice acquired on or after the date the original instrument was acknowledged, sworn to, or proved and filed for record as required by law and before the correction instrument has been acknowledged, sworn to, or proved and filed for record as required by law."). Broadway Bank argues, however, that the supreme court intended to exclude Yates and EOG from that review. The parties also disagree

about whether the supreme court's remand permits us to review a question the parties refer to as "the life estate issue."

*Did the Supreme Court Remand Yates's and EOG's Bona Fide Purchaser Defense?*

Broadway Bank contends that the validity of Yates's and EOG's bona fide purchaser defenses is outside the scope of the supreme court's remand because those appellants did not request a remand to this court on that issue. However, EOG's supreme court briefing explicitly argued that if the supreme court did not affirm this court's judgment, it should "remand to the Fourth Court or to the trial court, as appropriate, for consideration of additional issues not presented for review." Additionally, both Yates's and EOG's supreme court briefs expressly adopted and incorporated the arguments made in the other appellants' briefs. *See* TEX. R. APP. P. 9.7 ("Any party may join in or adopt by reference all or any part of a brief, petition, response, motion, or other document filed in an appellate court by another party in the same case."). ACG3's supreme court briefing requested a remand on the bona fide purchaser issue and presented argument in support of that result. Accordingly, we disagree with Broadway Bank's assertion that Yates and EOG waived our review of this issue on remand. *See id.*

Broadway Bank also contends Yates and EOG waived this issue by representing in the probate court and the supreme court that their bona fide purchaser defense was "irrelevant." The record shows, however, that Yates and EOG stated only that their bona fide purchaser defense was immaterial to the question of whether the 2013 Amended Correction Deed complied with section 5.029's signature requirements. *Compare* TEX. PROP. CODE § 5.029(b), *with id.* § 5.030(c). Both Yates's and EOG's live answers asserted a bona fide purchaser defense, and their summary judgment filings argued they acquired the subject minerals for value without notice of any potentially adverse claims. This record does not support a conclusion that either Yates or EOG waived their bona fide purchaser defenses.

For these reasons, we hold that Yates's and EOG's bona fide purchaser defenses are within the scope of the supreme court's remand.

*Did the Supreme Court Remand the Life Estate Issue?*

The question the parties refer to as "the life estate issue" revolves around whether the Trust Amendment permitted Broadway Bank to convey an interest greater than a life estate to John. Appellants contend that the resolution of the life estate issue is necessary to dispose of this appeal—and therefore falls within the scope of the supreme court's remand—because "if the 2003 Trust Amendment did not actually limit John's interest to a life estate, then there is nothing to Broadway Bank's argument that John could not sell to Yates in fee simple." Stated differently, appellants argue that if the Trust Amendment did not prohibit the 2005 Mineral Deed's fee simple conveyance to John, then: (1) there was no error to be corrected by the 2013 Amended Correction Deed; (2) the 2013 Amended Correction Deed is therefore not a valid correction instrument; and (3) the 2005 fee simple conveyance to John, John's 2012 conveyance to Yates, and Yates's later conveyances to the other appellants are binding and effective.

As the supreme court recognized, the record shows the parties to the 2005 Mineral Deed executed the 2013 Amended Correction Deed because they concluded the 2005 deed contained an error:

> In the 2005 Mineral Deed, John received an undivided 25 percent interest in fee simple, which the Bank asserts was a mistake. *To correct the error*, the Bank, as Trustee, filed a Corrected Mineral Deed in 2006, explaining that John was only entitled to the distribution of a life estate in the minerals conveyed in the 2005 deed. . . . In November 2013, the Bank, as Trustee, executed and recorded an Amended Correction Deed, which was signed by all of the parties to the original 2005 Mineral Deed. Like the 2006 Correction, the 2013 Amended Correction Deed *advised that the 2005 Mineral Deed made an incorrect conveyance* of a fee estate to John, who instead was entitled to only a life estate, with remainder interest identified as in the 2006 Correction.

*Broadway Nat'l Bank*, 631 S.W.3d at 19–20 (emphasis added). The supreme court appeared to accept that the 2005 Mineral Deed contained an error. *See id.* at 22 ("The error here is material, and thus the correction instrument must comply with 5.029."). Nevertheless, appellants argue that we must look beyond the 2013 Amended Correction Deed's recitation that the original fee simple conveyance to John was made in error and consider whether that recitation arose from an incorrect interpretation of the Trust Amendment.

We agree with appellants that the supreme court did not explicitly decide whether the Trust Amendment permitted Broadway Bank to convey more than a life estate to John. Nevertheless, we conclude this issue falls outside the scope of the remand to this court for several reasons. First, as Broadway Bank notes, appellants sought rehearing on this issue in the supreme court and asked that court to either resolve the life estate issue or to clearly instruct this court to do so on remand. The supreme court denied that request. We agree with Broadway Bank that we may not "proceed exactly as if [appellants'] request for a broader remand had been granted."

Second, the supreme court framed the primary issue presented to it as: "Whether the execution of the 2013 Amended Correction Deed complies with Property Code section 5.029 and *thus validly corrects a material error in the original 2005 Mineral Deed.*" *Id.* at 22 (emphasis added). In answering this question, the court held that "section 5.029 is satisfied when all the original parties agree to sign the correction instrument" and that the statute "provides for unanimous agreement among the parties to an original conveyance as a means to correct a material error and does not otherwise provide that the existence of an assign must supersede or replace that method[.]" *Id.* at 26. The court further held that the Amended Correction Deed satisfied section 5.029's requirements and is therefore a valid correction instrument. *Id.* at 27. Nevertheless, appellants argue on remand that the life estate issue renders the 2013 Amended Correction Deed *ineffective* because that issue shows the 2013 Amended Correction Deed did not "correct[] a

material error in the original 2005 Mineral Deed." We cannot resolve that question in appellants' favor without running afoul of the supreme court's plain holding. *See id.* at 26–27; *see also, e.g.*, *Rice v. Rice*, 533 S.W.3d 58, 62 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Under principles of vertical stare decisis, Texas intermediate appellate courts and trial courts are bound by the decisions of the Texas Supreme Court.").

Third, appellants' argument asks us to treat the Trust Amendment, rather than the 2013 Amended Correction Deed, as the controlling document in this dispute. Appellants contend that if the Trust Amendment gave Broadway Bank authority to convey the subject minerals to John in fee simple, then any contrary factual recitations in the 2013 Amended Correction Deed render the correction instrument ineffective. While we note that a correction instrument is "subject to rebuttal," TEX. PROP. CODE § 5.030(a)(4), we conclude the Trust Amendment does not rebut the 2013 Amended Correction Deed for two reasons. First, as noted above, we are bound by the supreme court's holding that the 2013 Amended Correction Deed is valid. *See Broadway Nat'l Bank*, 631 S.W.3d at 26–27; *Rice*, 533 S.W.3d at 62. Second, even if we assume the Trust Amendment gave Broadway Bank authority to make a fee simple conveyance to John, the 2013 Amended Correction Deed shows that Broadway Bank, John, and the other parties to the 2005 Mineral Deed intended to limit John's interest to a life estate. *See* TEX. PROP. CODE ANN. § 5.027(a) (valid correction instrument "may correct an ambiguity or error in a recorded original instrument of conveyance . . . including an ambiguity or error that relates to the description of or extent of the interest conveyed"). We see nothing in the Property Code or the supreme court's opinion that allows us to either override the original parties' determination that Broadway Bank did not intend to make a fee simple conveyance to John or to consider what those parties would have intended had they interpreted the Trust Amendment differently. *See* TEX. PROP. CODE § 5.030(a)(2), (3)

(correction instrument that complies with section 5.029 is "prima facie evidence of the facts stated in the" instrument and is "presumed to be true"); *Broadway Nat'l Bank*, 631 S.W.3d at 23–26.

Finally, Yates argues the life estate issue "is subsumed under the bona fide purchaser defense" because "if the Trust Amendment and case law prove as a matter of law that John's interest was not 'for life only' and could be conveyed in fee simple, then Yates could not have had notice of any 'claim or interest' in the property, as would be required to defeat its bona fide purchaser status." Again, we disagree. "A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third party claim or interest." *Noble Mortg. & Invs., LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65, 75 (Tex. App.— Houston [1st Dist.] 2011, no pet.). Whether a grantee has notice sufficient to preclude a bona fide purchaser defense "concerns whether the purchaser has notice of *any claimed* interest in the property, whether or not that claim ultimately proves valid." *Trinity Fin. Servs., LLC v. Mahanay*, No. 02-21-00027-CV, 2022 WL 247433, at *6 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.) (citing *Broadway Nat'l Bank*, 631 S.W.3d at 26). Evidence of notice "does not hinge on the validity of the claimed interest, but on knowledge of the claim regardless of its validity." *Id.* at *7. A purchaser can lose its ability to claim bona fide purchaser status if it "takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence[.]" *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because the validity of a claimed interest does not determine whether a purported bona fide purchaser had notice of that interest, we need not reach the life estate issue to resolve appellants' bona fide purchaser defense. *See id.*; *see also Trinity Fin. Servs.*, 2022 WL 247433, at *6–7.

For these reasons, we conclude the life estate issue falls outside the scope of the supreme court's remand. We therefore decline appellants' invitation to consider that issue.

### Bona Fide Purchaser

*Standard of Review*

As noted above, the Texas Supreme Court instructed us "to consider the parties' arguments in light of the summary judgment ruling that neither Yates nor its assigns are bona fide purchasers." *Broadway Nat'l Bank*, 631 S.W.3d at 29–30. We review the probate court's summary judgment de novo. *See, e.g.*, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To be entitled to traditional summary judgment, the movant must show that there are no material issues of fact and it is therefore entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). If the movant meets that burden, the respondent must bring forth evidence creating a genuine issue of material fact to preclude summary judgment. TEX. R. CIV. P. 166a(c); *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.).

*Applicable Law*

The Texas Supreme Court held that the 2013 Amended Correction Deed is a valid correction instrument. *See Broadway Nat'l Bank*, 631 S.W.3d at 27. We must therefore treat the 2013 Amended Correction Deed as if it replaced and was a substitute for the 2005 Mineral Deed through which John initially obtained his interest in the subject minerals. *See id.*; *see also* TEX. PROP. CODE § 5.030(b).

Nevertheless, even a valid, effective correction instrument "is subject to the property interest of . . . a subsequent purchaser for valuable consideration without notice acquired on or after the date the original instrument was acknowledged, sworn to, or proved and filed for record as required by law and before the correction instrument has been acknowledged, sworn to, or proved and filed for record as required by law." *Id.* § 5.030(c). "Thus, even when a correction instrument is properly executed and recorded, a bona fide purchaser's property interest still

controls if the purchaser acquired its interest prior to the correction instrument being recorded." *Broadway Nat'l Bank*, 631 S.W.3d at 27.

"Status as a bona fide purchaser is an affirmative defense," and the person asserting that defense must show that he acquired the subject property "in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). The sole issue presented by this dispute is whether appellants acquired their interests in the subject minerals without notice of the remaindermen's claim to those minerals. Notice sufficient to defeat a bona fide purchaser defense may be actual or constructive. *See id.* A person has actual notice of a fact when he obtains "personal information or express knowledge" that is actually communicated to him. *See Nguyen v. Chapa*, 305 S.W.3d 316, 323 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also Madison*, 39 S.W.3d at 606. In contrast, "[c]onstructive notice is notice the law imputes to a person not having personal information or knowledge." *Madison*, 39 S.W.3d at 606.

*Application*

All of the appellants acquired their interests in the subject minerals before the execution of the 2013 Amended Correction Deed. Accordingly, even though the supreme court has held that the 2013 Amended Correction Deed was effective, Broadway Bank was not entitled to a summary judgment that the appellants were bound by that instrument unless it conclusively established the appellants had actual or constructive notice of the relevant facts stated therein. *See Broadway Nat'l Bank*, 631 S.W.3d at 27; *see also* TEX. R. CIV. P. 166a(c); *Madison*, 39 S.W.3d at 606.

In its amended cross-motion for summary judgment, Broadway Bank argued that none of the appellants qualified for protection as bona fide purchasers because they "had actual and/or constructive notice of the 2006 Correction Deed and that the interest they acquired was a life estate

only." Because the other appellants took their interests in the subject minerals from Yates, we will begin by considering whether Yates had actual or constructive notice of the remaindermen's claim.

A.     Yates

Broadway Bank sought summary judgment on Yates's bona fide purchaser defense, but Yates did not file a competing motion for summary judgment on that issue. Because Yates was the non-movant on this issue, we review the summary judgment evidence in the light most favorable to Yates and indulge every reasonable inference and resolve all doubts in its favor. *See, e.g.*, *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019).

The summary judgment evidence shows that in November of 2006—approximately six years before Yates acquired its interests in the subject minerals from John—Broadway Bank sent Yates recorded copies of the 2006 Correction Mineral Deed. That instrument, which is substantively identical to the 2013 Amended Correction Deed, recited that the 2005 Mineral Deed had conveyed the interests to John in fee simple "[b]y oversight," that the conveyance to John should have been limited to a life estate, and that specific individuals owned remainder interests in John's share of the minerals. In response to Broadway Bank's motion, Yates essentially conceded that it received the 2006 Correction Mineral Deed before it acquired its interest in the subject minerals in 2012. This evidence satisfied Broadway Bank's threshold summary judgment burden to establish that Yates acquired the subject minerals with actual notice of the remaindermen's claim. TEX. R. CIV. P. 166a(c); TEX. PROP. CODE § 5.030(c).

The burden thus shifted to Yates to present evidence raising a genuine issue of material fact about whether it had actual notice of the remaindermen's claim. TEX. R. CIV. P. 166a(c); *Romo*, 48 S.W.3d at 269. While Yates did not deny that Broadway Bank had sent it copies of the 2006 Correction Mineral Deed, it argued that it could not be charged with notice of the remaindermen's claim for several reasons. First, it argued that "actual notice is a question of fact, not of law." While

actual notice often presents a question of fact, that issue may present a question of law "when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *Nguyen*, 305 S.W.3d at 323. Yates did not present any evidence showing that under these circumstances, there is room for reasonable minds to differ about whether it received actual notice of the 2006 Correction Mineral Deed's recitation of the remaindermen's claimed interest in the subject minerals. *See id.*; *see also* TEX. R. CIV. P. 166a(c).

Yates's summary judgment response also argued that even if it received actual notice of the 2006 Correction Mineral Deed, that notice would not defeat its bona fide purchaser defense because the 2006 Correction Mineral Deed "was ineffective and unenforceable" and notified Yates only "of an alleged mistake that had never been proved or properly corrected." On remand, Yates similarly argues that "a void correction deed provides notice of nothing." As support for this assertion, Yates cites *Tanya L. McCabe Trust v. Ranger Energy LLC*, which held that a recorded correction instrument "could not be construed as notice to a subsequent buyer of the facts stated therein" because that instrument was not executed in compliance with section 5.029. 531 S.W.3d 783, 798 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also* TEX. PROP. CODE § 5.030(a)(5) (recorded correction instrument executed in compliance with section 5.029 constitutes notice to subsequent purchasers).

*Tanya L. McCabe Trust* is distinguishable from these facts. Broadway Bank did not rely solely on the recording of the 2006 Correction Mineral Deed to charge Yates with notice of the facts stated in that instrument. *See Tanya L. McCabe Tr.*, 531 S.W.3d at 791–92. Instead, it presented evidence that it mailed copies of that instrument to Yates, and Yates conceded it received those copies approximately six years before it acquired its interests in the subject minerals. We decline Yates's invitation to hold that an invalid correction instrument is wholly ineffective to impart notice on a subsequent purchaser where, as here, that purchaser conceded that it received a

copy of the instrument before it acquired the property at issue. *Cf. Nguyen*, 305 S.W.3d at 323 (noting that an unrecorded conveyance is only wholly void "as to a subsequent purchaser who purchases the property for valuable consideration *and without notice*") (emphasis added). Moreover, as explained above, the validity of the remaindermen's claimed interest is irrelevant to the question of whether Yates had notice of that claim. *See Trinity Fin. Servs.*, 2022 WL 247433, at *6–7. While we agree that the 2006 Correction Mineral Deed was ineffective, Yates did not present any summary judgment evidence that raised a genuine issue of material fact about whether its factual recitations were sufficient to "excite the suspicions of a person of ordinary prudence[.]"[4] *See Hahn*, 321 S.W.3d at 527.

Yates also argued below that the only "notice" that can defeat a bona fide purchaser defense under these circumstances is described by section 5.030(a)(5), which provides that a correction instrument that complies with section 5.029 constitutes "notice to a subsequent buyer of the facts stated in the correction instrument." TEX. PROP. CODE § 5.030(a)(5). Because the 2006 Correction Mineral Deed did not comply with section 5.029 and the 2013 Amended Correction Deed was not recorded until after Yates acquired its interest in the subject minerals, Yates argued that neither instrument constituted "notice" as that term is used in section 5.030. *See id.*; *see also id.* § 5.030(c). However, when the legislature enacted section 5.030 in 2011, it was well-established that a purchaser who acquired property with either constructive or actual notice of a potential third-party claim could not successfully assert a bona fide purchaser defense. *See, e.g.*, *Madison*, 39 S.W.3d

---

[4] EOG argues Yates's receipt of the 2006 Correction Mineral Deed did not constitute actual notice of the remaindermen's potential claim because "any further inquiry by Yates would have revealed only that the 2005 Mineral Deed was completely valid and not a mistake at all because the trust documents gave Broadway full authority to convey fee simple to John." However, the record shows that after EOG acquired its interests from Yates, it discovered the existence of the 2006 Correction Mineral Deed and contacted Broadway Bank to inquire about the validity of that instrument. EOG's inquiry specifically questioned whether the instrument was consistent with the Trust Amendment. Neither EOG nor Yates identified any evidence below showing that Yates could not have similarly questioned Broadway Bank about the validity of the 2006 Correction Mineral Deed before it acquired the subject interests. *See Hahn*, 321 S.W.3d at 527.

at 606. We must presume the legislature was aware of this existing law when it enacted section 5.030. *See, e.g.*, *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012). We therefore do not read section 5.030 as extending bona fide purchaser protection to purchasers who acquired the property after obtaining actual notice of a potentially adverse claim.

Yates also argued below that the recording of the 2006 Correction Mineral Deed was insufficient to constitute constructive notice because it was outside of John's—and therefore Yates's—chain of title. However, because Broadway Bank conclusively showed that Yates received actual notice, we need not determine whether Yates also had constructive notice of that instrument. *See, e.g.*, *Madison*, 39 S.W.3d at 606 (notice that will defeat bona fide purchaser defense "may be constructive *or* actual") (emphasis added).

Finally, relying on *Harrell v. Hickman*, 215 S.W.2d 876 (Tex. 1948) and *Moody v. Pitts*, 708 S.W.2d 930 (Tex. App.—Corpus Christi–Edinburg 1986, no writ), Yates argues that the holder of a life estate—here, Yates's grantor, John—can sell the property in fee simple as long as he holds the proceeds of the conveyance for the remaindermen. "Although a life tenant ordinarily cannot convey an estate that is greater than one tied to her life, the instrument conveying the life estate can confer greater powers upon the life tenant." *Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied). Both *Harrell* and *Moody* involved conveyance instruments that gave a life estate tenant unlimited power to dispose of the fee estate. *See Harrell*, 215 S.W.2d at 878; *Moody*, 708 S.W.2d at 933, 936; *but see Montgomery v. Browder*, 930 S.W.2d 772, 777 (Tex. App.—Amarillo 1996, writ denied) ("[G]iving a life tenant extensive powers of disposition does not convert the life estate into a fee simple title."). The 2013 Amended Correction Deed—which, again, the supreme court's opinion requires us to treat as having replaced the 2005 Mineral Deed through which John initially acquired the interest he later conveyed to

Yates—did not grant any such authority to John. Furthermore, Yates did not present any evidence that John held the proceeds of the sale to Yates for the remaindermen.

For these reasons, the probate court did not err by determining that Broadway Bank conclusively showed that Yates received actual notice of the remaindermen's claim and Yates did not present evidence that raised a genuine issue of material fact on that issue. TEX. R. CIV. P. 166a(c). We therefore affirm the portion of the probate court's summary judgment concluding that Yates was not entitled to protection as a bona fide purchaser. Because the supreme court held that the 2013 Amended Correction Deed was a valid correction instrument, our conclusion that Yates was not a bona fide purchaser requires us to hold that Yates was bound by the 2013 Amended Correction Deed and therefore acquired only a life estate interest from John. *See* TEX. PROP. CODE § 5.030(b), (c). Because it is undisputed that John died on February 10, 2014, Yates's life estate terminated on that date as a matter of law. TEX. R. CIV. P. 166a(c); *Montgomery*, 930 S.W.2d at 778.

B.     Other Appellants

"It is axiomatic that a grantor cannot convey to a grantee a greater or better title than he holds." *Law v. State*, 811 S.W.2d 265, 267 (Tex. App.—Houston [1st Dist.] 1991, no pet.); *see also Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956) ("We take it that no authority need be cited for the proposition that a deed can pass no greater estate than that owned by the grantor."). Based on this general proposition, the probate court concluded that because Yates was not a bona fide purchaser and was therefore bound by the 2013 Amended Correction Deed, the other appellants were also bound by that instrument. On remand, Broadway Bank urges us to apply this general rule to affirm the probate court's summary judgment against the non-Yates appellants and to hold that the subject minerals belong to the remaindermen as a matter of law.

However, this general rule applies only if the grantee fails to "show[] himself to be a bona fide purchaser[.]" *See, e.g.*, *Hartel v. Dishman*, 145 S.W.2d 865, 609 (Tex. 1940); *Decker v. Decker*, 192 S.W.3d 648, 658 (Tex. App.—Fort Worth 2006, no pet.) ("If a subsequent purchaser cannot show himself to be a bona fide purchaser, then he acquires only the rights that his grantor had."). The bona fide purchaser doctrine "is founded in comparative equity" and is intended to protect a grantee who "comes to the transaction innocent and is caught unawares." *Trinity Fin. Servs.*, 2022 WL 247433, at \*7. And, as explained above, the Property Code provides that a valid correction instrument is subject to the property interest of a bona fide purchaser. TEX. PROP. CODE § 5.030(c). Accordingly, to determine whether the non-Yates appellants are bound by the 2013 Amended Correction Deed, we must consider whether the summary judgment record supports the probate court's conclusion that those parties were not bona fide purchasers. *See id.*; *see also, e.g.*, *Hartel*, 145 S.W.2d at 609.

### 1. Jalapeno and Curry Glassell

Like Yates, Jalapeno and Curry Glassell filed a response to Broadway Bank's motion for summary judgment on their bona fide purchaser defense but did not affirmatively seek their own summary judgment on that issue. We therefore review the summary judgment evidence in the light most favorable to them and indulge every reasonable inference and resolve all doubts in their favor. *See Scripps*, 573 S.W.3d at 790. As non-movants, Jalapeno and Curry Glassell did not have any burden to produce summary judgment evidence unless Broadway Bank established it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

Broadway Bank did not argue or present any evidence showing that it mailed the 2006 Correction Mineral Deed to Jalapeno or Curry Glassell, as it did with Yates. Nor did it present any evidence that Jalapeno or Curry Glassell received actual notice of the facts contained in the 2006

Correction Mineral Deed through other means. Instead, it argued Jalapeno and Curry Glassell had constructive notice of the 2006 Correction Mineral Deed because that instrument was filed of record before they acquired their interests in the subject minerals.

"Under Texas law, a subsequent creditor or purchaser is only deemed on constructive notice of recorded documents within its direct chain of title that either reveal the interests of another, or that contain recitals that would put a prudent purchaser on inquiry notice of another's interest outside the chain of title." *Ovation Servs., LLC v. Richard*, 624 S.W.3d 610, 621 (Tex. App.—Tyler 2021, no pet.). "'Chain of title' has been defined to be [t]he successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder." *Noble Mortg.*, 340 S.W.3d at 80 (internal quotation marks omitted). Here, it is undisputed that the 2006 Correction Mineral Deed was executed after the 2005 Mineral Deed under which John—Jalapeno and Curry Glassell's grantor's grantor—originally acquired the property. Accordingly, Jalapeno's and Curry Glassell's chain of title would have included any instruments executed by John between his acquisition of the property and his conveyance of it to another, but that chain would not include any instruments executed by Broadway Bank after it conveyed the property to John. *See id.*

Because Broadway Bank relied solely on the filing of the 2006 Correction Mineral Deed to show constructive notice, it did not identify any evidence within Jalapeno's or Curry Glassell's chain of title showing that those parties either actually were or should have been aware of the remaindermen's claims when they acquired their interests in the subject minerals. *See Madison*, 39 S.W.3d at 606 (defining actual and constructive notice). Broadway Bank therefore did not show as a matter of law that Jalapeno or Curry Glassell had constructive notice of the remaindermen's claims. *See Ovation Servs.*, 624 S.W.3d at 621. Because Broadway Bank did not conclusively establish that Jalapeno or Curry Glassell had either actual or constructive notice of the

remaindermen's claims, the probate court erred by granting Broadway Bank a summary judgment on those parties' bona fide purchaser defenses. *See id.*; *see also* TEX. R. CIV. P. 166a(c).

Broadway Bank also argued below that Jalapeno and Curry Glassell may not claim an interest greater than that owned by their grantor, Yates. Because Broadway Bank did not conclusively establish that Jalapeno and Curry Glassell were not bona fide purchasers, we may not affirm the probate court's summary judgment against them on this basis. *See, e.g.*, *Hartel*, 145 S.W.2d at 609.

Because Broadway Bank did not establish as a matter of law that Jalapeno and Curry Glassell are not entitled to protection as bona fide purchasers, it also did not show as a matter of law that they are bound by the 2013 Amended Correction Deed. TEX. PROP. CODE § 5.030(c). We therefore reverse the probate court's summary judgment against Jalapeno and Curry Glassell on their bona fide purchaser defense, as well as the probate court's conclusion that those parties are bound by the 2013 Amended Correction Deed. We remand those issues to the probate court for further proceedings. TEX. R. CIV. P. 166a(c); TEX. PROP. CODE § 5.030(c).

### 2. ACG3 and Glassell Non-Operated Interests

In addition to responding to Broadway Bank's motion for summary judgment, ACG3 and Glassell Non-Operated Interests affirmatively sought summary judgment on their bona fide purchaser defense. Because those motions directly competed with Broadway Bank's request for summary judgment on the same issue, we must review all the evidence presented by Broadway Bank, ACG3, and Glassell Non-Operated Interests and render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

As was the case with Jalapeno and Curry Glassell, Broadway Bank's motion for summary judgment did not argue that ACG3 or Glassell Non-Operated Interests had actual notice of the facts recited in the 2006 Correction Mineral Deed when they acquired their interests in the subject

minerals. Accordingly, Broadway Bank did not show it was entitled to judgment as a matter of law on that question. *See* Tex. R. Civ. P. 166a(c); *Lujan*, 555 S.W.3d at 84.

Broadway Bank argued that ACG3 and Glassell Non-Operated Interests had constructive notice of the 2006 Correction Mineral Deed. However, it based that argument solely on its assertions that: (1) the 2006 Correction Mineral Interest was filed of record; and (2) Yates's actual knowledge should be imputed to ACG3 and Glassell Non-Operated Interests. As with Jalapeno and Curry Glassell, these arguments did not conclusively establish that ACG3 or Glassell Non-Operated Interests had constructive notice of the remaindermen's interest. *See* Tex. R. Civ. P. 166a(c); *Ovation Servs.*, 624 S.W.3d at 621; *Noble Mortg.*, 340 S.W.3d at 80. Because Broadway Bank did not conclusively establish that ACG3 or Glassell Non-Operated Interests had either actual or constructive notice of the remaindermen's interests, the probate court erred by granting summary judgment for Broadway Bank on those appellants' bona fide purchaser defenses. Tex. R. Civ. P. 166a(c); Tex. Prop. Code § 5.030(c).

Our conclusion that Broadway Bank was not entitled to summary judgment against ACG3 and Glassell Non-Operated Interests does not necessarily mean the probate court should have granted their competing motion. *See, e.g.*, *DCP Sand Hills Pipeline, LLC v. San Miguel Elec. Coop., Inc.*, No. 04-19-00288-CV, 2020 WL 6748725, at *7 (Tex. App.—San Antonio Nov. 18, 2020, pet. denied) (mem. op.) (concluding neither side was entitled to summary judgment on certain issues). ACG3 and Glassell Non-Operated Interests' motion incorporated the arguments and evidence in Yates's and EOG's summary judgment motions and responses, but it did not raise any additional arguments or present any other evidence on behalf of ACG3 or Glassell Non-Operated Interests. After reviewing the summary judgment record, we see no evidence that conclusively established the bona fide purchaser defenses asserted by ACG3 or Glassell Non-

Operated Interests. *See* TEX. R. CIV. P. 166a(c); *JLB Builders*, 622 S.W.3d at 864. The probate court therefore did not err by denying their motion for summary judgment. TEX. R. CIV. P. 166a(c).

For these reasons, we reverse the probate court's summary judgment against ACG3 and Glassell Non-Operated Interests on their bona fide purchaser defense, as well as the probate court's conclusion that those parties are bound by the 2013 Amended Correction Deed. We remand those issues to the probate court for further proceedings. TEX. R. CIV. P. 166a(c); TEX. PROP. CODE § 5.030(c).

### 3. EOG

Broadway Bank and EOG filed competing motions for summary judgment on EOG's bona fide purchaser defense. We must therefore review all the evidence presented by Broadway Bank and EOG and render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

Broadway Bank's motion for summary judgment argued that EOG was not a bona fide purchaser because it had actual notice of the 2006 Correction Mineral Deed before it acquired its interest in the subject minerals. As support for this assertion, Broadway Bank presented a memorandum authored by one of EOG's title attorneys that referred to the 2006 Correction Mineral Deed. Broadway Bank argued that this memorandum was dated April 19, 2013, a date that preceded EOG's acquisition of the subject minerals. The summary judgment record shows, however, that the memorandum was dated *August* 19, 2013. EOG presented summary judgment evidence showing that it acquired its interest in the subject minerals after August 19, 2013. Accordingly, the summary judgment evidence upon which Broadway Bank relied did not conclusively establish that EOG had actual knowledge of the 2006 Correction Mineral Deed when it acquired its interest in the subject minerals. TEX. R. CIV. P. 166a(c); *City of Keller v. Wilson*, 168

S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case.").

On the question of whether EOG had constructive notice of the 2006 Correction Mineral Deed, Broadway Bank's motion again argued only that: (1) the 2006 Correction Mineral Interest was filed of record; and (2) Yates's actual knowledge should be imputed to EOG. As was the case with the other non-Yates appellants, these arguments did not conclusively establish that EOG had constructive notice of the remaindermen's interest. *See* TEX. R. CIV. P. 166a(c); *Ovation Servs.*, 624 S.W.3d at 621; *Noble Mortg.*, 340 S.W.3d at 80. Because Broadway Bank did not conclusively show that EOG had either actual or constructive notice of the remaindermen's interests, the probate court erred by granting summary judgment for Broadway Bank on EOG's bona fide purchaser defense. TEX. R. CIV. P. 166a(c); TEX. PROP. CODE § 5.030(c).

Again, however, our conclusion that Broadway Bank did not show it was entitled to summary judgment on EOG's bona fide purchaser defenses does not necessarily mean EOG was entitled to judgment as a matter of law on that point. While EOG presented an affidavit from its land manager averring that EOG acquired its interests in the subject minerals without actual notice of the 2006 Correction Mineral Deed, we do not believe the probate court was required to treat that evidence as conclusive. TEX. R. CIV. P. 166a(c); *City of Keller*, 168 S.W.3d at 816. This is because the issue of whether a party has received actual notice generally presents a question of fact that may not be resolved on summary judgment. *See, e.g.*, *Hahn*, 321 S.W.3d at 527. Although a notice question may be resolved on summary judgment if reasonable minds could not differ on the conclusion to be drawn from the evidence, *see id.*, we do not believe a factfinder would be required to credit the affidavit of EOG's land manager on this point. *See City of Keller*, 168 S.W.3d at 819 ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another."). Because EOG

therefore did not establish that it was entitled to judgment on its bona fide purchaser defense as a matter of law, the probate court did not err by denying EOG's motion for summary judgment. TEX. R. CIV. P. 166a(c).

For these reasons, we reverse the probate court's summary judgment against EOG on its bona fide purchaser defense, as well as the probate court's conclusion that EOG is bound by the 2013 Amended Correction Deed. We remand those issues to the probate court for further proceedings. TEX. R. CIV. P. 166a(c); TEX. PROP. CODE § 5.030(c).

### *Constitutionality of Section 5.029*

Appellants argue that section 5.029, "as construed by the Texas Supreme Court, is unconstitutional" because it deprives them of a property interest without notice, a hearing, or compensation. Appellants contend the Texas Supreme Court's analysis is inconsistent with *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), a recent opinion of the United States Supreme Court.

As an intermediate court of appeals, we lack authority to review the constitutionality or validity of the Texas Supreme Court's conclusions. *See Rice*, 533 S.W.3d at 62; *see also Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh, J., concurring) ("[V]ertical *stare decisis* is absolute, as it must be in a hierarchical system[.]"). Moreover, as with the life estate issue, appellants raised this constitutional challenge—including the purported conflict with *Cedar Point Nursery*—in their motion for rehearing in the supreme court, and the supreme court denied that motion without instructing us to consider it on remand. Accordingly, we do not believe appellants' constitutional challenge falls within the scope of the supreme court's remand.

Even if we assume appellants' constitutional challenge is limited to the statute itself—as opposed to the supreme court's interpretation of it—a constitutional challenge to a statute can be waived if it is not timely asserted. *See* TEX. R. APP. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697,

698 (Tex. 1993); *Tien Tao Ass'n, Inc. v. Kingsbridge Park Cmty. Ass'n, Inc.*, 953 S.W.2d 525, 532 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Here, the record shows appellants did not raise their constitutional challenge in the probate court. Instead, they challenged the constitutionality of section 5.029 for the first time on rehearing in the Texas Supreme Court. While we recognize that appellants could not know for certain how the supreme court would interpret section 5.029 until after the court issued its opinion, the court's interpretation of the statute is identical to the position Broadway Bank has advocated throughout this case. Accordingly, to the extent that appellants challenge the constitutionality of the statute itself, we conclude they waived that issue by failing to raise it in the probate court. *Cf. In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000) (statutes are presumptively constitutional "and attacks on that presumption should generally be raised as an affirmative defense to enforcement of the statute").

## CONCLUSION

We affirm the probate court's judgment as to Yates. We reverse the probate court's judgment as to EOG, Jalapeno, ACG3, Glassell Non-Operated Interests, and Curry Glassell and remand for further proceedings consistent with this opinion.

Beth Watkins, Justice